UNIVERSAL HEALTH SERVICES OF McALLEN, INC., a Hospital and Wholly-owned SUBSIDIARY OF UNIVERSAL HEALTH SERVICES, INC., Plaintiff,

v.

Louis W. SULLIVAN, M.D., Secretary of the Department of Health and Human Services, Defendant.

Civ. A. No. 90–3046.

United States District Court, District of Columbia.

Aug. 21, 1991.

---

Lloyd A. Bookman, Hooper, Lundy & Bookman, Inc., Los Angeles, Cal., David T. Smorodin, Washington, D.C., for plaintiff.

Stuart M. Gerson, Asst. Atty. Gen., Jay B. Stephens, U.S. Atty., Sheila M. Lieber, Stephen G. Harvey, Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM OPINION

FLANNERY, District Judge.

Plaintiff Universal Health Services of McAllen ("UHS") brings this action challenging certain regulations promulgated by defendant the Secretary of the Department of Health and Human Services ("the Secretary"). The Secretary responds by arguing that the Court lacks subject matter jurisdiction to review the regulations. As discussed below, the Court finds that it has jurisdiction to review the Secretary's promulgation of the regulations and that the

challenged regulations are not substantively or procedurally invalid.

## I. *Background*

The Medicare Act ("the Act"), codified as Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 *et seq.*, establishes a system of health insurance for the aged and disabled. The Medicare program consists of Part A, which covers inpatient hospital services and certain other institutional services, and Part B, which covers physician services and certain outpatient services. Only Part A is at issue in this lawsuit.

The Secretary is the federal official responsible for administering the Medicare program. UHS, a hospital located in McAllen, Texas, has been duly certified as a "provider of services" under the Medicare Act. *See* 42 U.S.C. § 1395x(u).

Under the Act, Part A services are furnished to beneficiaries by providers of services who have entered into written agreements with the Secretary. *Id.* § 1395cc. The providers are reimbursed by the Secretary under a prospective payment system. *Id.* The amount of reimbursement to a provider hospital for a given service is dependent upon the hospital's "average standardized amount" per discharge, *see* 42 U.S.C. § 1395ww(d)(2)(C), (D), and the area wage index applicable to the hospital. *See id.* § 1395ww(d)(3)(E).

The average standardized amount and the area wage index are based upon the hospital's geographic location. All hospitals participating in the Medicare program are classified as located in "large urban areas," "other urban areas," or "rural areas." 42 U.S.C. § 1395ww(d)(2)(D).[1] The average standardized amount per discharge is determined by reference to the hospital's geographic classification. *Id.* The area wage index is determined by comparing the relative hospital wage level in the hospital's geographic classification to the national average hospital wage level. *Id.* §§ 1395ww(d)(2)(H), (3)(E).

Effective October 1, 1988, Congress amended § 1395ww(d)(8)(B) of the Act to allow the Secretary to treat certain rural hospitals as urban hospitals for purposes of determining average standardized amounts and area wage indices. Omnibus Budget Reconciliation Act ("OBRA") of 1987, Pub.L. No. 100–203, § 4005(a), 101 Stat. 1330, 1330–47 and –48, *as amended by* Medicare Catastrophic Coverage Act of 1988, Pub.L. No. 100–360, § 411(b)(4), 102 Stat. 683, 770. "Congress intended that [§ 1395ww(d)(8)(B) ] apply to a limited number of [rural] hospitals that, arguably, merited payment at the other urban rate because of their location in counties adjacent to at least one [urban area] and their commuting patterns." 55 Fed.Reg. 36,753, 36,755 (Sept. 6, 1990). Many rural hospitals sought reclassification under this provision, but their requests were denied because they did not meet the criteria of § 1395ww(d)(8)(B). *Id.*

In response, Congress enacted § 6003(h)(1) of the 1989 OBRA, Pub.L. No. 101–239, § 6003(h)(1), 103 Stat. 2106, 2154–56 (1989), *codified as amended at* 42 U.S.C. § 1395ww(d)(10). *See* 55 Fed.Reg. at 36,755. This provision establishes the procedure by which a hospital can request that the Secretary change the hospital's geographic classification for purposes of determining the hospital's average standardized amount and area wage index. 42 U.S.C. § 1395ww(d)(10)(C)(i). Under this procedure, all requests for geographic reclassification are decided by a newly-created Medicare Geographic Classification Review Board ("the Board"), which is composed of five members appointed by the Secretary. *Id.* §§ 1395ww(d)(10)(A–C). Of the five members, two must be representative of rural area hospitals and at least one must "be knowledgeable in the field of analyzing costs with respect to the provision of inpatient hospital services." *Id.* § 1395ww(d)(10)(B)(i).

A hospital seeking reclassification must submit its request to the Board no later

---

**1.** A "large urban area" is an area determined by the Secretary to have a population of more than one million. 42 U.S.C. § 1395ww(d)(2)(D). An "urban area" is an area within a Metropolitan Statistical Area, as defined by the Office of Management and Budget. *Id.* A "rural area" is any area outside of an urban area. *Id.*

than the first day of the preceding fiscal year. 42 U.S.C. § 1395ww(d)(10)(C)(ii). The Board then must issue its decision on the hospital's request within 180 days. *Id.* § 1395ww(d)(10)(C)(iii)(I). All decisions of the Board are appealable to Secretary, who must render a decision within ninety days of the appeal. *Id.* § 1395ww(d)(10)(C)(iii)(II). Decisions of the Secretary are "final and shall not be subject to judicial review." *Id.*

In addition to setting forth the procedure for geographic reclassification, the 1989 amendment to the Act directs the Secretary to promulgate guidelines to be used by the Board in reaching reclassification decisions. Section 1395ww(d)(10)(D) of the Act provides that:

(i) The Secretary shall publish guidelines to be utilized by the Board in rendering decisions on applications submitted under this paragraph, and shall include in such guidelines the following:

(I) Guidelines for comparing wages, taking into account occupational mix, in the area in which the hospital is classified and the area in which the hospital is applying to be classified.

(II) Guidelines for determining whether the county in which the hospital is located should be treated as being part of a particular Metropolitan Statistical Area.

(III) Guidelines for considering information provided by an applicant with respect to the effects of the hospital's geographic classification on access to inpatient services by medicare beneficiaries.

(IV) Guidelines for considering the appropriateness of the criteria used to define New England County Metropolitan Areas.

(ii) The Secretary shall publish the guidelines described in clause (i) by July 1, 1990.

42 U.S.C. § 1395ww(d)(10)(D); *see* OBRA of 1989, Pub.L. No. 101–239, § 6003(h)(1), 103 Stat. 2106, 2154, *as amended by* OBRA of 1990, Pub.L. No. 101–508, § 4002(h), 104 Stat. 1388, 1388–37 to –38. On September 6, 1990, the Secretary published his guidelines[2] as interim final rules, which became effective immediately without notice and the opportunity for public comment. 55 Fed.Reg. 36,753, 36,754 (Sept. 6, 1990). The Secretary did, however, provide for a sixty-day comment period following publication of the guidelines. *Id.* at 36,754, 36,766.

The Secretary's guidelines set forth certain criteria that must be met by a hospital seeking reclassification to another geographic area for purposes of using that area's average standardized amount, wage index value, or both. At issue in this litigation is the requirement that "to be redesignated to a different rural or urban area, a hospital must demonstrate a close proximity to the adjacent area to which it seeks redesignation ..." 42 C.F.R. § 412.-230(a)(3). This "proximity requirement" is defined as follows:

(b) *Proximity criteria.* A hospital demonstrates a close proximity with the adjacent area to which it seeks redesignation if one of the following conditions applies:

(1) The distance from the hospital to the adjacent area is no more than 15 miles for an urban hospital and no more than 35 miles for a rural hospital.

(2) At least 50 percent of the hospital's employees reside in the adjacent area.

*Id.* § 412.230(b).

The deadline for reclassification requests for the fiscal year beginning October 1, 1991 was October 1, 1990, with additional information needed to complete the application considered timely if received by the

---

**2.** The guidelines were published as interim final rules and codified at 42 C.F.R. § 412.230–280 (1990).

On June 4, 1991, during the pendency of this litigation, the Secretary promulgated his final rules. *See* 56 Fed.Reg. 25,457 (June 4, 1991). These final rules did not change the proximity requirement, but they did correct a technical error in 42 C.F.R. § 412.230(e)(ii), which sets forth the general reclassification criteria and incorporates by reference the proximity requirement. No substantive amendment was made to any interim guideline that is relevant to the disposition of the issues raised by this litigation.

Board before 5:00 p.m. on November 6, 1990. 55 Fed.Reg. at 36,574. By letter to the Board dated September 27, 1990, *UHS,* an urban area hospital located in the McAllen–Edinburg–Mission Metropolitan Statistical Area ("MSA"), requested reclassification to the adjacent Brownsville–Harlington MSA. On November 5, 1990, UHS supplemented its original application and requested reclassification for wage index purposes only. UHS also acknowledged in the November 5 letter that, although it satisfied the other criteria for use of the Brownsville–Harlington MSA wage index, it did not meet the Secretary's proximity requirement.[3] It is estimated that UHS will lose approximately $2.7 million in additional Medicare reimbursement in fiscal year 1992 as a result of its failure to meet the reclassification guidelines.

On December 14, 1990, without waiting for the Board to rule upon its reclassification request, UHS filed this lawsuit challenging the validity of 42 C.F.R. § 412.-230(b). On April 5, 1991, UHS served its first amended complaint on the Secretary. On April 25, 1991, the Board denied UHS' request for reclassification on the ground that UHS is an urban hospital that is not within fifteen miles of the area to which it seeks reclassification.[4] UHS appealed the Board's denial to the Secretary on May 10, 1991. On August 8, 1991, the Secretary

issued his ruling affirming the Board's denial of UHS' request for reclassification.[5] The Secretary's decision was based upon UHS' failure to satisfy the proximity criteria of 42 C.F.R. § 412.230(b). Decision at 3–4. In reaching his decision, the Secretary considered and rejected UHS' argument that the proximity requirement was inconsistent with congressional intent in amending the Medicare Act. *Id.* at 5–9.

## II. *Judicial Review of the Secretary's Guidelines*

The Secretary argues that the Court lacks jurisdiction to hear UHS' challenges to the guidelines because Congress intended to preclude judicial review of the Secretary's decisions and because UHS failed to exhaust its administrative remedies prior to bringing this action. The Secretary also argues that the guidelines are not subject to judicial review because promulgation of the guidelines is committed to agency discretion by law.

### A. Preclusion of Judicial Review

UHS brings this action for declaratory and injunctive relief under the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.* The APA confers a general cause of action upon persons "adversely affected or aggrieved by agency action," *id.* § 702, but withdraws that cause of action to the extent that the relevant statute precludes

---

**3.** The guideline requirements for reclassification for wage index purposes are as follows:

(e) *Use of urban or other rural area's wage index*—(1) *Criteria for use of adjacent area's wage index.* To use an adjacent area's wage index, a hospital must demonstrate the following:

(i) The hospital's incurred wage costs are comparable to hospital wage costs in an adjacent urban or rural area;

(ii) The hospital has the necessary geographic relationship as specified in *§ 412.-230(a)* [paragraphs (a) and (b) of this section]; and

(iii) One of the following conditions apply:

(A) The hospital's average hourly wage is equal to at least 85 percent of the average hospital hourly wage in the adjacent area; or

(B) The hospital's average hourly wage weighted for occupational categories is at least 90 percent of the average hospital hourly wage in the adjacent area.

42 C.F.R. § 412.230(e). The final rules amended this provision by omitting the underlined portion of subsection (ii) and substituting the

bracketed material. 56 Fed.Reg. 25,457, 25,488 (June 4, 1991). The purpose of this amendment was to correct the inadvertent omission of a reference to paragraph (b) in subsection (ii). *Id.* at 25,472.

**4.** The basis of the Board's denial is derived from the parties' statement of uncontroverted material facts filed in support of their respective motions. There is no indication whether the Board considered the alternative ground for reclassification, whether fifty percent of UHS' employees reside in the adjacent area. 42 C.F.R. § 412.-230(b)(2). The parties agree, however, that UHS failed to satisfy the proximity requirement, and the Court assumes this representation to be true for purposes of this decision.

**5.** The Secretary's decision was rendered after the Court had taken the parties' motions under advisement. The decision has been made available to the Court by the parties and will be made part of the official record in this matter.

judicial review. *Id.* § 701(a)(1); *see Block v. Community Nutrition Inst.*, 467 U.S. 340, 345, 104 S.Ct. 2450, 2453, 81 L.Ed.2d 270 (1984). "Whether and to what extent a particular statute precludes judicial review is determined not only from its express language, but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved." *Block*, 467 U.S. at 345, 104 S.Ct. at 2453–54; *accord Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 673 & n. 4, 106 S.Ct. 2133, 2137 & n. 4, 90 L.Ed.2d 623 (1986).

■ The Court begins "with the strong presumption that Congress intends judicial review of administrative action." *Michigan Academy*, 476 U.S. at 670, 106 S.Ct. at 2135; *see McNary v. Haitian Refugee Center, Inc.*, —— U.S. ——, 111 S.Ct. 888, 898, 112 L.Ed.2d 1005 (1991); *Bartlett v. Bowen*, 816 F.2d 695, 699 (D.C.Cir.1987). "[O]nly upon a showing of 'clear and convincing evidence' of a contrary legislative intent should the courts restrict access to judicial review." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967) (citations omitted); *see Michigan Academy*, 476 U.S. at 671, 106 S.Ct. at 2136. The party seeking to read a legislative scheme to preclude review bears the burden of demonstrating Congress' intent to do so. *Block*, 467 U.S. at 351, 104 S.Ct. at 2456; *Bartlett*, 816 F.2d at 699. "[W]here substantial doubt about the congressional intent exists, the general presumption favoring judicial review of administrative action is controlling." *Block*, 467 U.S. at 351, 104 S.Ct. at 2456–57; *see Michigan Academy*, 476 U.S. at 672 n. 3, 106 S.Ct. at 2136 n. 3.

■ The Court finds no preclusion of judicial review in the express language of the Act. The Act provides that the Secretary's rulings on appeals from Board reclassification decisions "shall be final and shall not be subject to judicial review." 42 U.S.C. § 1395ww(d)(10)(C)(iii)(II). The Act does not, however, expressly preclude judicial review of the guidelines utilized by the Board and the Secretary in deciding upon reclassification requests. The Court does not find the Act's preclusion of review of individual reclassification determinations to imply a congressional intent to preclude review of the underlying guidelines. *See McNary*, 111 S.Ct. at 896 (statutory preclusion of judicial review of Immigration and Naturalization Service's immigration status "determinations" does not bar constitutional challenges to agency's practices and policies used in processing applications for adjustments to immigration status); *Michigan Academy*, 476 U.S. at 675–76, 106 S.Ct. at 2138–39 (statutory preclusion of judicial review of the Secretary's determination of the amount of Medicare benefit payments due to physicians does not bar physicians' challenges to the method by which benefit amounts are determined).

Likewise, the Court finds no express mention of an intention to preclude judicial review of the validity of the guidelines in the legislative history of the OBRA of 1989, Pub.L. No. 101–239, § 6003(h)(1), 103 Stat. 2106, 2154, which added § 1395ww(d)(10) to the Act. *See* H.R. No. 247, 101st Cong., 1st Sess., *reprinted in* 1989 U.S.Code Cong. & Admin.News 1906; H.R.Conf.Rep. No. 386, 101st Cong., 1st Sess., *reprinted in* 1989 U.S.Code Cong. & Admin.News 3018.[6]

The Secretary argues, however, that preclusion of judicial review is implied from the statutory scheme of the Medicare Act. The Secretary relies upon two aspects of the Act. First, he notes that Congress established a specific timetable for rulings

---

6. The Secretary points to the following statement in the legislative history of the Act:

[C]oncern has been raised regarding the lack of judicial review for decisions of the Secretary concerning decisions of the board. The conferees intend to monitor closely the development of the board and to take appropriate action to provide for such judicial review as necessary.

H.R.Conf.Rep. No. 3299, 101st Cong., 1st Sess. 715 (1989). This statement does not support the Secretary's argument for preclusion of judicial review of the validity of the guidelines, but, rather, it merely reaffirms the plain language of the Act which precludes review of individual reclassification decisions. 42 U.S.C. § 1395ww(d)(10)(C)(iii)(II).

on and appeals from rulings on reclassification requests. *See* 42 U.S.C. § 1395ww(d)(10)(C)(iii). This timetable, argues the Secretary, ensures an efficient and expeditious system for processing reclassification applications that would be undermined by the lengthy process of judicial review.

Second, the Secretary claims that judicial review of the guidelines would interfere with the Secretary's statutory duty to ensure that all reclassification decisions are "budget neutral." Under § 1395ww(d)(8)(D) of the Act,[7] the Secretary has an obligation to ensure that any reclassification decision is offset by an adjustment to the Medicare payment rates so as not to increase or decrease aggregate Medicare reimbursement. According to the Secretary, all Medicare budget calculations must be made prior to the commencement of the fiscal year to ensure budget neutrality for that fiscal year. The Secretary argues that allowing civil actions to challenge the reclassification guidelines would disrupt the Medicare budgeting process, making it impossible for the Secretary to ensure budget neutrality during the course of the fiscal year, as intended by Congress.

Although the Secretary raises some legitimate concerns regarding administration of the Medicare program, the Court is not persuaded that these concerns are sufficient to preclude judicial review of the Secretary's reclassification guidelines. The Court agrees that Congress intended to establish an efficient and expeditious process for ruling upon reclassification requests and that judicial review would interfere with that process. However, UHS does not ask the Court to intervene in the reclassification process, but rather to review the validity of the guidelines underlying that process. The challenges raised by UHS simply are not the type of judicial interference that Congress sought to avoid. On the contrary, they are the types of challenges traditionally considered by federal courts in reviewing administrative action. To hold otherwise would insulate the Secretary's regulatory promulgations from compliance with federal law for the sake of administrative efficiency in reclassification determinations.

The Secretary's concerns about judicial interference with his budget neutrality calculations are also unwarranted. That a challenge to the validity of the reclassification decisions may result in disruption of the budget neutrality calculations in certain fiscal years does not justify allowing the Secretary to conduct these calculations based upon guidelines which may be in violation of federal law. Further, there is no danger that the courts will upset the Secretary's Medicare reimbursement allocations in piecemeal fashion because the Act expressly precludes courts from reviewing individual reclassification determinations. Finally, the Secretary's contention that a grant of retroactive relief by the Court would disrupt previously completed budget calculations is an issue relevant to the proper remedy to awarded, not to whether the Court may exercise jurisdiction to hear a challenge to the guidelines.

The Secretary's reliance upon *Block v. Community Nutrition Inst.*, 467 U.S. 340, 104 S.Ct. 2450, 81 L.Ed.2d 270 (1984), in support of his argument for preclusion of judicial review is misplaced. In *Block*, the Supreme Court held that the structure of the milk price subsidy scheme created by the Agricultural Marketing Agreement Act of 1937, 7 U.S.C. § 601 *et seq.*, precluded consumer challenges to the Secretary of

---

**7.** The "budget neutrality" provision of the Act provides:

> (D) The Secretary shall make a proportional adjustment in the standardized amounts determined under paragraph (3) for hospitals located in an urban area to assure that the provisions of subparagraphs (B) and (C) or a decision of the Medicare Geographic Classification Review Board or the Secretary under paragraph (10) do not result in aggregate payments under this section that are greater or less than those that would otherwise be made. The Secretary shall make such adjustment in payments under this section to hospitals located in rural areas as are necessary to assure that the aggregate of payments to rural hospitals not affected by subparagraphs (B) and (C) are not changed as a result of the application of subparagraphs (B) and (C).

42 U.S.C. § 1395ww(d)(8)(D).

Agriculture's determination of minimum milk prices. *Id.* at 352–53, 104 S.Ct. at 2457–58. The Court overcame a strong presumption in favor of judicial review only upon finding that Congress had expressly authorized milk distributors, or "handlers," to seek review of the Secretary's actions and that "[h]andlers can therefore be expected to challenge unlawful agency action and to ensure that the statute's objectives will not be frustrated." *Id.* at 352, 104 S.Ct. at 2457. Ironically, the Court determined that consumer suits would frustrate the complex, cooperative regulatory scheme intended to benefit consumers. *Id.* In contrast, the Medicare Act does not expressly designate a group authorized to "challenge unlawful agency action," nor does it designate a proxy to safeguard the interests of the provider hospitals. Whereas *Block* leaves open the possibility of a challenge to the validity of the administrative action, the Secretary urges the Court to interpret the Medicare Act to foreclose all such challenges to the guidelines. The Court finds no support for the Secretary's position in *Block.*

The Court finds instead that this case is controlled by the Supreme Court cases *Bowen v. Michigan Academy of Family Physicians,* 476 U.S. 667, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986), and *McNary v. Haitian Refugee Center, Inc.,* —— U.S. ——, 111 S.Ct. 888, 112 L.Ed.2d 1005 (1991). In both cases, the Supreme Court held that express statutory preclusions of judicial review of agency determinations did not preclude judicial review of the administrative regulations underlying those determinations. The *Michigan Academy* Court, in rejecting the argument that a statutory preclusion of Medicare amount determinations implied a general preclusion of judicial review, held that the statutory preclusion "simply does

not speak to challenges mounted against the *method* by which such amounts are to be determined rather than the *determinations* themselves." 476 U.S. at 675, 106 S.Ct. at 2138. Similarly, the *McNary* Court held that a statutory preclusion of judicial review of agency rulings on applications for changes in immigration status did not bar "general collateral challenges to unconstitutional practices and policies used by the agency in processing applications." 111 S.Ct. at 896.[8]

Like the statutes in *Bowen* and *McNary,* the Medicare Act's preclusion of review of the Board's and Secretary's reclassification decisions does not preclude judicial inquiry into the validity of the Secretary's guidelines. The Court finds that the Secretary has failed to overcome the strong presumption in favor of judicial review of agency actions because he has failed to show by clear and convincing evidence that the statutory language, the legislative history, or the statutory scheme of the Act evinces a clearly discernible congressional intent to preclude judicial review.

### B. Exhaustion of Administrative Remedies

■ As a general rule, "judicial review can only take place once administrative action is final and all administrative remedies have been exhausted." *Peter Kiewit Sons' Co. v. United States Army Corps of Eng'rs,* 714 F.2d 163, 167 (D.C.Cir.1983); *see McKart v. United States,* 395 U.S. 185, 193, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969). The Secretary argues that this action should be dismissed because UHS failed to await the Secretary's ruling on its administrative appeal prior to filing its complaint. UHS responds that the exhaustion requirement is inapplicable in this case

---

**8.** The Secretary argues that UHS' challenges to the guidelines are not collateral—and thus that *McNary* is distinguishable—because UHS seeks, among other remedies, an injunction requiring the Board and the Secretary to reconsider its reclassification application without reference to the proximity requirement. The Court disagrees with the Secretary's characterization of this action. Although the relief sought by UHS will necessarily affect the reclassification pro-

cess, UHS does not seek direct review of the reclassification decision. UHS' challenge is collateral: UHS contends that the proximity requirement was promulgated in violation of the APA. Although *McNary* involved only collateral constitutional challenges to administrative regulations, the Court finds that the *McNary* holding is equally applicable to collateral challenges brought under federal statutes.

because there are no administrative remedies available to UHS.[9]

UHS contends, and the Secretary has conceded at oral argument, that the Secretary does not have the authority to invalidate his guidelines without further notice and opportunity for comment. In effect, UHS could not have obtained the relief it seeks upon its direct appeal to the Secretary. The Court further finds that the provisions of the Act creating and defining the powers of the Board did not confer upon the Board the authority to entertain challenges to the validity of the guidelines used in reaching its reclassification decisions. "Administrative remedies that are inadequate need not be exhausted." *Coit Indep. Joint Venture v. Federal Sav. & Loan Ins. Corp.*, 489 U.S. 561, 109 S.Ct. 1361, 1375, 103 L.Ed.2d 602 (1989) (citing cases). The Court finds that the administrative process did not afford the remedy sought by UHS, that exhaustion of administrative remedies would have been futile, and that UHS' complaint should not be dismissed for having been filed prior to the Secretary's ruling on appeal.

The Secretary raised the possibility that, although he may lack the authority to grant UHS the relief it requests in this action, he may have been able to affirm the Board's denial of UHS' reclassification request on grounds independent of UHS' failure to satisfy the proximity requirement. This argument is, of course, now moot in light of the Secretary's decision on appeal. The Court finds, however, that this argument is further proof of the inadequacy of the administrative remedies available to UHS, because it indicates that although the Secretary lacked authority to invalidate the guidelines, he possessed the authority to deny UHS' appeal on a variety of grounds. Thus, UHS was not required to await the Secretary's ruling prior to filing its complaint with this Court.

## C. Committed to Agency Discretion

■ Section 701(a)(2) of the APA precludes judicial review of agency action to the extent that "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). This is a very narrow exception to the APA's general conferral of a right to judicial review of administrative actions, and "it is applicable in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply.'" *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410, 91 S.Ct. 814, 821, 28 L.Ed.2d 136 (1971) (quoting S.Rep. No. 752, 79th Cong., 1st Sess., 26 (1945)); *see National Treasury Employees Union v. Horner*, 854 F.2d 490, 495 (D.C.Cir.1988). The determination of whether there is law to apply requires, first, a careful evaluation of the statute and the underlying agency action to determine whether the considerations in favor of nonreviewability overcome the strong presumption in favor of judicial review. *American Friends Serv. Comm. v. Webster*, 720 F.2d 29, 40 (D.C.Cir.1983). The Court must also consider certain pragmatic factors to determine whether a particular agency action is properly subject to judicial review. *National Treasury Employees Union*, 854 F.2d at 497; *American Friends Serv. Comm.*, 720 F.2d at 39; *Natural Resources Defense Council, Inc. v. SEC*, 606 F.2d 1031, 1043 (D.C.Cir.1979).

■ The Secretary argues that the Act delegates to the Secretary such broad discretion to promulgate reclassification guidelines that the Court is left without any meaningful standard with which to evaluate the exercise of that discretion. The Secretary claims that § 1395ww(d)(10)(D) of the Act, although it sets forth four criteria that must be included in the guidelines, gives the Secretary plenary authority to adopt other factors which he considers to be relevant in deciding upon reclassification requests. This grant of plenary discretion, argues the Sec-

---

**9.** The Secretary's motion to dismiss based upon UHS' failure to exhaust its administrative remedies may have been rendered moot by the Secretary's August 8, 1991 denial of UHS' appeal. The Court will nonetheless address the exhaus-

tion issue to the extent that the Secretary is understood to argue that UHS' complaint should be dismissed because it was filed prior to the Secretary's ruling on appeal.

retary, vests in the Secretary the unreviewable authority to promulgate reclassification guidelines.

The Court disagrees with the Secretary and finds that the Act does provide sufficient legal standards by which the Court can judge the Secretary's actions. The relevant provisions of the Act, its legislative history, and the Secretary's own background statement to the interim guidelines, see 55 Fed.Reg. at 36,754–55, indicate that the goal of the reclassification procedure is to adequately compensate hospitals that face increased costs due to competition with hospitals in geographic areas reimbursed at higher rates under the Medicare program. The Court can review the Secretary's proximity requirement in light of that statutory purpose to determine whether the requirement is consistent with congressional intent and whether it is a reasonable method to achieve the goals of the Act. Although the Secretary has been delegated broad discretion to carry out the provisions of the Medicare Act, "even very broad discretion is not the same as unreviewable discretion." *National Treasury Employees Union*, 854 F.2d at 495. Given the strong presumption of judicial review of agency action and the clearly discernible congressional intent underlying the Act's reclassification provisions, the Court does not find that the Act provides no meaningful legal standard with which to judge the Secretary's guidelines.

The Secretary has cited to no case which has held that the promulgation of administrative regulations may be insulated from judicial review. Only two cases cited by the Secretary have held agency actions to be committed to agency discretion so as to preclude judicial review, and neither case compels a similar conclusion in the present case. In *Heckler v. Chaney*, 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985), the Supreme Court held that the decision of the Food and Drug Administration ("FDA") *not* to undertake enforcement action is a decision generally committed to an agency's absolute discretion and that there is a presumption that judicial review is not available in such a situation. *Id.* at 831, 105 S.Ct. at 1655. The Court analogized such a decision to an exercise of prosecutorial discretion, involving allocations of executive branch resources which the Court is not qualified to review. *Id.* at 831–32, 105 S.Ct. at 1655–56. The Court contrasted the FDA's refusal to act with the situation in which the agency does take some type of affirmative action, in which case "the action at least can be reviewed to determine whether the agency exceeded its statutory powers." *Id.* at 832, 105 S.Ct. at 1656.

In *Webster v. Doe*, 486 U.S. 592, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988), the Supreme Court held that the decision of the Director of the Central Intelligence Agency ("CIA") to dismiss one of its employees was within the Director's unlimited and unreviewable discretion. *Id.* at 2051. The Court based its decision upon factors that are not present in the present case, such as the broader national security implications associated with ensuring CIA employee trustworthiness and the "extraordinary deference" afforded the Director under the National Security Act of 1947. *Id.* at 2052–53.

Pragmatic considerations also dictate in favor of judicial review of the Secretary's guidelines. The three particularly important pragmatic considerations are:

> (1) "the need for judicial supervision to safeguard the interests of the plaintiffs"; (2) "the impact of review on the effectiveness of the agency in carrying out its congressionally assigned role;" and (3) "the appropriateness of the issues raised for judicial review."

*American Friends Serv. Comm.*, 720 F.2d at 41 (quoting *Natural Resources Defense Council*, 606 F.2d at 1044); *accord National Treasury Employees Union*, 854 F.2d at 497. First, judicial review is necessary to ensure that the Secretary's guidelines do not serve to deny hospitals reclassification—and increased Medicare reimbursement—in a manner contrary to Congress' intent or in a manner that is arbitrary and capricious. Second, as discussed previously, UHS' challenges to the validity of the guidelines will not interfere with individual reclassification decisions, the reclassification timetable created by the Act,

or the Secretary's duty to ensure budget neutrality in each fiscal year. Third, the issues raised by UHS—whether the Secretary complied with substantive and procedural provisions of the APA—are particularly well-suited to judicial review.

The Court finds that the Act is not devoid of legal standards which would allow the Court to review the Secretary's reclassification guidelines, and thus that the promulgation of the guidelines is not committed to the Secretary's discretion by law. The Court also finds that pragmatic considerations dictate in favor of judicial review of the guidelines, and the Court will now turn to the merits of UHS' challenges.

### III. *UHS' Challenges to the Secretary's Guidelines*

UHS brings its challenges to the validity of the proximity requirement under § 706 of the APA. Section 706 provides, in relevant part, that the Court shall

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

\* \* \* \* \* \*

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; [or]

(D) without observance of procedure required by law;

5 U.S.C. § 706(2)(A), (C), (D). UHS raises both substantive and procedural challenges to the Secretary's guidelines.

### A. Substantive Challenges

#### 1. *Section 706(2)(C)*

■ UHS first argues that promulgation of the proximity requirement is in excess of the Secretary's statutory authority and is inconsistent with congressional intent in establishing the Board to decide upon reclassification requests. Congress specifically directed the Secretary to promulgate guidelines in four areas. *See* 42 U.S.C. § 1395ww(d)(10)(D)(i). UHS contends that because Congress did not expressly direct the Secretary to consider proximity as a

factor in the Board's reclassification decisions, the Secretary's promulgation of the proximity requirement is in excess of his statutory authority and is contrary to congressional intent. UHS also claims that Congress intended to create a Board which would exercise flexibility and expertise in ruling upon reclassification requests. UHS argues that the proximity requirement creates an absolute, numeric criteria which strips the Board of the discretion and equitable power intended by Congress.

Congress expressly directed the Secretary to "publish guidelines to be utilized by the Board in rendering decisions on [reclassification] applications," *id.*, but it did not speak to whether proximity should be a factor utilized by the Board or whether a proximity requirement should be promulgated as one of the Secretary's guidelines. In situations when Congress delegates authority to an agency to administer a statute but does not directly address a particular question arising from the agency's statutory interpretation, the Court is guided by the Supreme Court holding in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). In *Chevron*, the Supreme Court held that if

the court determines that Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

"The power of an administrative agency to administer a congressionally created ... program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly by Congress." If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given

controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute. Sometimes the legislative delegation to an agency on a particular question is implicit rather than explicit. . . .

*Id.* at 843–44, 104 S.Ct. at 2782 (footnotes and citations omitted).

The Court finds that the Secretary's promulgation of the proximity requirement did not exceed his statutory authority nor did it contravene congressional intent. A plain reading of the Act reveals that Congress did not intend to limit the Secretary's guidelines to the four subjects expressly mentioned in § 1395ww(d)(10)(D)(i), but rather that the Secretary's guidelines must "include" the four enumerated considerations. 42 U.S.C. § 1395ww(d)(10)(D)(i). The use of the word "include" evinces Congress' conferral of authority to promulgate guidelines in addition to those expressly mentioned by the Act. *See* Webster's Third New International Dictionary 1143 (1971) (defining "include" as "to place, list, or rate as a part or component of a whole or of a larger group, class, or aggregate"). Thus, the Act's requirement that the Secretary promulgate four specific types of guidelines cannot be read as a bar to other, unenumerated types of guidelines.

The Court further finds that the proximity requirement is not inconsistent with a congressional intent to give the Board broad discretion in ruling upon reclassification requests. First, an examination of the Act does not reveal a congressional intent to give the Board broad discretion or equitable powers. The only provision of the Act that expressly confers authority upon the Board is § 1395ww(d)(10)(E)(i), which grants the Board authority to establish rules and procedures, to administer oaths and affirmations, and to issue subpoenas. 42 U.S.C. § 1395ww(d)(10)(E)(i). The only grant of authority to establish substantive reclassification criteria is contained in § 1395ww(d)(10)(D)(i), which confers upon *the Secretary* the authority to promulgate the reclassification guidelines. *Id.* § 1395ww(d)(10)(D)(i).

Although UHS argues that the composition of the Board indicates that Congress intended that it possess and exercise expertise in its reclassification decisions, again an examination of the Act undermines UHS' contention. Far from establishing a Board of experts, the Act only requires that *one* of the five members "be knowledgeable in the field of analyzing costs with respect to the provision of inpatient hospital services." 42 U.S.C. § 1395ww(d)(10)(B)(i). The authority to establish substantive reclassification criteria is vested in the Secretary, not the Board, an indication that Congress did not intend to create a Board which would exercise discretion independently of the Secretary.

Of course, the Act does not strip the Board of all independent decision-making authority. The Board's authority to receive and consider applications for reclassification necessarily implies the power to interpret and apply the guidelines, 42 C.F.R. § 412.250, and to hold evidentiary hearings and to make findings of fact. *Id.* § 412.254. The Act, however, clearly creates a Board which is subordinate to the Secretary on substantive reclassification matters and which must render its decisions in accordance with the guidelines promulgated by the Secretary. It is incongruous, then, to suggest that the proximity requirement strips the Board of congressionally-intended flexibility when the Board's entire substantive authority is derived from the guidelines promulgated by the Secretary.

That the proximity requirement is not contrary to Congress' intent is further supported by the Secretary's independent statutory duty to ensure budget neutrality in each fiscal year. *See* 42 U.S.C. § 1395ww(d)(8)(D). The Secretary is required to ensure budget neutrality by making adjustments to Medicare reimbursement rates in response to hospital reclassification. *Id.* Because the number of reclassifications will directly bear upon the Secretary's budget neutrality calculations, it is logical to assume that Congress intended to vest in the Secretary the substantive authority necessary to determine the criteria for reclassification. To find that the

Board should have authority to exercise discretion independently of the Secretary's published guidelines would effectively undermine the Secretary's ability to ensure budget neutrality by establishing the criteria by which hospitals may be reclassified.

Finally, of significance in discerning congressional intent, the Court notes that Congress has amended relevant provisions of the Act subsequent to the enactment of the proximity requirement and has not acted to overrule that requirement. *See* OBRA of 1990, Pub.L. No. 101–508, § 4002(h), 104 Stat. 1388, 1388–37 to –38. "[W]here Congress has re-enacted the statute without pertinent change ... failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress." *NLRB v. Bell Aerospace Co. Div. of Textron Inc.,* 416 U.S. 267, 275, 94 S.Ct. 1757, 1762, 40 L.Ed.2d 134 (1974) (footnotes omitted); *see also Haig v. Agee,* 453 U.S. 280, 297–98, 101 S.Ct. 2766, 2776–77, 69 L.Ed.2d 640 (1981); *United States v. Rutherford,* 442 U.S. 544, 554, 99 S.Ct. 2470, 2476, 61 L.Ed.2d 68 (1979).[10] That Congress has amended the Act without disapproving of the proximity requirement is persuasive evidence that the requirement is not contrary to congressional intent.

Thus, the Court finds that the Secretary's promulgation of the proximity requirement is not in excess of his statutory authority nor is it contrary to Congress' intent. The Court next turns to UHS' contention that the proximity requirement is arbitrary and capricious.

### 2. Section 706(2)(A)

■ UHS argues that the Secretary's proximity requirement is arbitrary and capricious. UHS first contends that the Secretary considered a factor, proximity, which the Act did not provide be utilized in reclassification decisions. UHS also claims that the Secretary failed to fulfill his obligation to "examine the relevant data and articulate a 'rational connection between the facts found and the choice made.'" *Motor Vehicles Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983) (citation omitted). UHS contends that the Secretary has failed to show that proximity considerations are necessary to or in furtherance of the congressional goals underlying the Act. UHS concedes that proximity may be a relevant consideration in ruling upon reclassification applications, but it disputes that the Secretary has adequately established that proximity should be used as an irrebuttable presumption in reclassification decisions.

In determining whether an agency decision is arbitrary and capricious,

> the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency.

*Overton Park,* 401 U.S. at 416, 91 S.Ct. at 823–24 (citations omitted). "Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider ..." *State Farm,* 463 U.S. at 43, 103 S.Ct. at 2867. The agency is also required to provide an explanation for its decision, including a rational connection between factors considered and the decision made. *Id.* The Court will not attempt itself to make up for deficiencies in agency action; however, the Court will " 'uphold a decision of less than ideal clarity if the agency's

---

10. Although the Secretary's proximity requirement is not a longstanding administrative statutory construction, as were the challenged regulations in the cited cases, two factors indicate that substantial weight should be accorded to Congress' failure to override the requirement. First, § 1395ww(d)(10)(D), which directed the Secretary to promulgate the guidelines, is a very recent enactment, having been added to the Act by the OBRA of 1989. Second, the Court may fairly conclude that Congress pays considerable attention to the administrative regulations enacted pursuant to the Act, especially those pertaining to the expenditure of public funds, because the Act is amended annually as part of the federal budgeting process culminating in the passage of the OBRA.

path may reasonably be discerned.' " *Id.* (citation omitted).

■ The Court does not find the Secretary's use of proximity as a criterion in his reclassification guidelines to be arbitrary and capricious. The Act is silent as to what factors—other than the four expressly mentioned by Act—the Secretary should include in his reclassification guidelines. Because the Act delegates to the Secretary the authority to implement the Act but is silent as to the exact means to carry out that implementation, the Court must give considerable deference to the Secretary's decisions. *See Chevron,* 467 U.S. at 844–45, 104 S.Ct. at 2782–83. Judicial deference is particularly appropriate because the Secretary's obligation to promulgate reclassification guidelines involves an " 'accommodation of conflicting policies that were committed to the agency's care by statute, ...' " *Id.* at 845, 104 S.Ct. at 2783 (citations omitted). As previously discussed, the Secretary's duty to ensure budget neutrality is at odds with his duty to reclassify hospitals so that they may receive increased Medicare reimbursement. The Secretary, as sole administrator of the Medicare Act, is in a unique position to evaluate and reconcile the competing policy concerns within the Medicare program. The Court must give considerable weight to the Secretary's policymaking decisions and will defer to the Secretary " 'unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned.' " *Id.* (citations omitted).

There are indications in the Act that Congress would have sanctioned the use of the proximity requirement. Congress itself made a hospital's adjacency to a particular county a prerequisite for use of that county's standardized amount and area wage index. 42 U.S.C. § 1395ww(d)(8)(B). The original intent of this provision was to benefit rural hospitals which faced increased competition for inpatients and employees based upon their locations in the commuting patterns of urban areas. *See* 55 Fed. Reg. 36,753, 36,754–55 (Sept. 6, 1990). Although UHS argues that adjacency is not the same as proximity, it would not have been illogical for the Secretary, based upon an examination of the purposes of the reclassification provisions of the Act, to have concluded that proximity should be one criterion for reclassification.

Based upon its examination of the Act and the obligations placed upon the Secretary by the Act, the Court does not find that the Secretary has made "a clear error in judgment" such that his promulgation of the proximity requirement was arbitrary and capricious. *See Overton Park,* 401 U.S. at 416, 91 S.Ct. at 823. The Court concedes that the Secretary's use of numerical criteria is, in one sense, arbitrary. As with any line-drawing exercise, certain entities will fall outside of the class or category created by the lawmakers. Such inequalities do not necessarily make the Secretary's decision *arbitrary and capricious,* however, for although a better method may exist by which to reclassify hospitals—or, more to the point, a method may exist which does not deny reclassification to UHS—the law requires only that the Secretary's guideline be reasonable as applied over the entire population of hospitals. *See Chevron,* 467 U.S. at 865, 104 S.Ct. at 2792 (agency interpretation of statute entitled to deference if it is a reasonable accommodation of competing interests). The Court is mindful that the Secretary's statutory duties include administration of the entire Medicare program, which necessarily involves policy choices and resource allocations. The proximity requirement is but a minor component of a vast regulatory scheme. The Court will not strike down this otherwise reasonable guideline because it, unfortunately, disadvantages one provider of services.[11]

---

11. UHS devotes a large portion of its argument to establishing that the proximity requirement has an unfair effect on UHS. Although the Court is not unsympathetic to UHS' situation, facts specific to UHS simply are not material to an evaluation of whether the proximity require-ment is arbitrary and capricious. Obviously, the Secretary cannot consider the impact upon each individual hospital in formulating his reclassification guidelines. A showing that the proximity requirement adversely affects one

The Court also finds that the Secretary has adequately established a rational connection between the proximity requirement and the factors underlying that requirement. In the preamble to the interim guidelines, the Secretary explained that, because individual hospitals may seek reclassification independently of other hospitals located in the same county, he considered it appropriate for a hospital seeking reclassification to establish a geographic nexus with the area to which it seeks reclassification. 55 Fed.Reg. at 36,761. The Secretary then set forth two alternative means to show a geographic nexus. The hospital could show that it was within a specified number of miles from the desired reclassification area. 42 C.F.R. § 412.-230(b)(1). The Secretary explained that he chose thirty-five miles for rural hospitals because that is the distance generally associated with defining rural hospital market areas. 55 Fed.Reg. at 36,761. The mileage requirement for urban areas was reduced to fifteen miles because of the general density of urban areas. *Id.* The Secretary realized that some hospitals, although unable to satisfy the mileage criteria, may merit reclassification due to competition with adjacent areas for employees and inpatients. *Id.* The Secretary thus allowed hospitals to make an alternative showing based upon the actual commuting patterns of their employees. 42 C.F.R. § 412.-230(b)(2); *see* 55 Fed.Reg. at 36,761.

UHS attacks the Secretary's explanation by pointing to other factors which it believes the Secretary should have considered. UHS argues, for example, that the Secretary should have discussed or cited studies showing whether wages and costs incurred by hospitals are affected only by competition with hospitals within the mileage figures ultimately adopted by the Secretary. *See* 42 C.F.R. § 412.-230(b)(1). UHS also challenges the justification for the commuting pattern criteria, *see id.* § 412.230(b)(2), arguing that the Secretary also should have evaluated employee perceptions about commuting.

hospital, therefore, will not suffice to prove that

The law, however, does not require the Secretary to engage in the type of exhaustive rulemaking procedure urged by UHS. The Secretary is not required "to consider all policy alternatives in reaching [his] decision." *State Farm*, 463 U.S. at 51, 103 S.Ct. at 2870. "[R]ulemaking 'cannot be found wanting simply because the agency failed to include every alternative device and thought conceivable by the mind of man ...' " *Id.* (quoting *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.*, 435 U.S. 519, 551, 98 S.Ct. 1197, 1215, 55 L.Ed.2d 460 (1978)). It is sufficient that the Secretary state his decision and the determinative reasons for that decision. *See Camp v. Pitts*, 411 U.S. 138, 143, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973). The Secretary's statement may be "curt," so long as it creates a record upon which the Court can review the reasons for his actions. *Id.*

The Court has previously examined the reasons given by the Secretary for promulgating the proximity requirement. The Court has found those reasons to be persuasive and adequate to explain the Secretary's decision. The Court also finds the Secretary's justification to be sufficient as a matter of law. The Secretary was not obligated to consider the additional factors proposed by UHS. Accordingly, the Court does not find the proximity requirement to be arbitrary and capricious.

### B. Procedural Challenges: Section 706(2)(D)

#### 1. *Good Cause*

■ Section 553 of the APA provides that agencies shall provide notice and an opportunity for public comment prior to rulemaking. 5 U.S.C. § 553(b), (c). An agency may dispense with the APA's notice and comment procedure, however

> when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest.

the requirement is unreasonable.

5 U.S.C. § 553(b)(B). The APA also requires that publication or service of a substantive rule shall not be less than thirty days prior to its effective date, except "as otherwise provided by the agency for good cause found and published with the rule." *Id.* § 553(d)(3). UHS argues that the guidelines are procedurally invalid because the Secretary, without an adequate showing of good cause, failed to engage in notice and comment rulemaking prior to promulgation of the guidelines.

On September 6, 1990, the Secretary published his guidelines as interim final rules, which became effective immediately without notice or the opportunity for public comment. 55 Fed.Reg. 36,753, 36,754 (Sept. 6, 1990). In the statement accompanying the interim rules, the Secretary expressly invoked the good cause exception of § 553(b)(B) and provided an explanation for his decision to forego notice and comment, concluding that delay in issuance of the guidelines would be contrary to the public interest. *See* 55 Fed.Reg. at 36,765–66. The Secretary explained that immediate publication of the guidelines was necessary to enable hospitals to timely apply for reclassification for fiscal year 1992 and to allow the Board to render its reclassification decisions by the statutory deadline of March 30, 1991. *Id.* at 36,765. The Secretary further explained that timely adjudication of reclassification requests was essential to ensure budget neutrality for fiscal year 1992. *Id.* at 36,766. These same concerns, according to the Secretary, justified making the interim rules effective upon publication. *Id.* The Secretary did, however, provide for a sixty-day comment period following publication of the interim rules. *Id.* at 36,754, 36,766. Comments were received and responses were published with the final rules on June 4, 1991. *See* 56 Fed.Reg. 25,457 (June 4, 1991).

The good cause exception to the APA's notice and comment requirement is to be "narrowly construed and only reluctantly countenanced." *New Jersey v. EPA,* 626 F.2d 1038, 1045 (D.C.Cir.1980). "[S]trict congressionally imposed deadlines, without more, by no means warrant invocation of the good cause exception." *Petry v. Block,* 737 F.2d 1193, 1203 (D.C.Cir.1984). At the same time, the Court is "duty bound to analyze the entire set of circumstances" surrounding the agency rulemaking to determine whether the agency justifiably invoked the good cause exception. *Petry,* 737 F.2d at 1203.

The Court has considered the circumstances surrounding the Secretary's promulgation of the reclassification guidelines and finds that the Secretary had good cause to proceed without notice and comment. The OBRA of 1989 was a major, complex legislative scheme which imposed numerous and complex administrative duties upon the Secretary. *See id.* at 1200–01 (complexity of statutory scheme and magnitude of responsibility placed upon agency relevant in determining whether agency properly invoked "good cause" exception). The Secretary's obligation to appoint and promulgate substantive guidelines for the newly-created Board, *see* 42 U.S.C. § 1395ww(d)(10)(B)(ii), (D), was but one of the Secretary's many statutory duties. *See* Pub.L. No. 101–239, §§ 6001–6901, 103 Stat. 2106–2301 (1989). The 1989 OBRA also required the Secretary to perform these complex tasks in relatively short order: the 1989 OBRA was passed on December 19, 1989 and required the Secretary to appoint a Board and issue guidelines by July 1990. *See id.*

Unfortunately, the Secretary did not meet his statutory deadlines, his interim guidelines not being issued until September 6, 1990. UHS argues that this delay undermines the Secretary's argument that he had good cause to dispense with notice and comment. According to UHS, if the Secretary had published his guidelines by July 1990, he could have provided for a notice and comment period and still have complied with the Act's timetable for reclassification rulings. UHS contends that the Secretary's delay in issuing his guidelines precludes him from relying upon the good cause exception of § 553(b)(B) and that the guidelines must be struck down.

Although the Secretary's dilatoriness should not be condoned, the Court disagrees that the delay in promulgating the

guidelines requires that they be struck down.[12] To invalidate the Secretary's administrative scheme at this point would undermine congressional intent in amending the Act. Retroactively striking down the guidelines would call into question previous reclassification decisions, possibly denying many hospitals the increased Medicare reimbursement that they are entitled to under the Act. Alteration or revocation of past reclassification approvals would also disturb budget neutrality in previous fiscal years and may make it impossible for the Secretary to ensure budget neutrality in fiscal year 1992. To hold that the Secretary's delay in promulgating the guidelines precludes a finding that he had good cause to proceed without notice and comment would "utterly frustrate Congress' intent ... and would, in effect, create a penalty, which is at complete odds with Congress' mandate, for the [Secretary's] failure to promulgate the rules in a timely fashion." *Petry*, 737 F.2d at 1202 n. 19.

The Court must review the Secretary's invocation of the good cause exception in light of the circumstances under which the guidelines were promulgated. *Id.* at 1203. The Court finds that providing for a notice and comment period prior to promulgation of the guidelines would have delayed implementation of the reclassification provisions of the Act and would have denied provider hospitals the benefits of reclassification which were expressly made available to these hospitals under the 1989 amendments to the Act.[13] Further, the Secretary was not at liberty to consider reclassification requests after the commencement of the fiscal year because of his obligation to en-

sure budget neutrality, a budgeting task that must be performed prior to the start of the fiscal year. Under these circumstances, the Court finds, while in no way condoning the Secretary's dilatoriness, that good cause existed to promulgate the interim rules without notice and the opportunity for public comment.

The Court also finds that the Secretary's failure to engage in pre-promulgation notice and comment was at least partially cured by allowing the opportunity for post-promulgation comment. Concurrent with his publication of the final rules, the Secretary responded to comments received in the sixty-day period following publication of the interim rules. *See* 56 Fed.Reg. 25,457 (June 4, 1991). The Secretary summarized and addressed the concerns raised by the commentators and incorporated some suggestions as amendments to the final rules. *See id.* Although post-promulgation opportunity for comment is not a substitute for pre-promulgation notice and comment, failure to comply with the pre-promulgation procedures of § 553 of the APA may "be cured by an adequate later notice" if "the agency's mind remain[ed] open enough at the later stage." *McLouth Steel Prods. Corp. v. Thomas*, 838 F.2d 1317, 1323 (D.C.Cir.1988). The Court finds that the Secretary adequately considered the post-promulgation comments before publishing his final rules, and that he displayed a willingness to incorporate public suggestions into the guidelines. The Court thus finds that remand to the Secretary for further rulemaking proceedings would serve no useful purpose. *See Petry*, 737 F.2d at 1203.[14]

---

12. The Court notes that if the Secretary failed to comply with the APA's rulemaking procedures, all of his guidelines—not only the proximity requirement—must be invalidated.

13. The Secretary published his interim final rules on September 6, 1990 and allowed hospitals until November 6, 1990 to apply for reclassification. 55 Fed.Reg. at 36,754. Under the Act, the Board would then have until May 1991 to rule upon the reclassification requests, *see* 42 U.S.C. § 1395ww(d)(10)(C)(iii)(I), and the Secretary would have until August 1991 to rule upon appeals from the Board. *See id.* § 1395ww(d)(10)(C)(iii)(II). This would leave

the Secretary with less than two months to incorporate the reclassifications into his budget for fiscal year 1992 and to perform the calculations necessary to ensure budget neutrality in fiscal year 1992.

14. The Court notes that even were it to find that the Secretary had failed to comply with proper rulemaking procedures, a remedy may not be available to UHS. First, as described *supra*, the post-promulgation period provided by the Secretary has served to cure his lack of pre-promulgation notice and comment. Second, if the Court were to order the Secretary to reformulate the guidelines and review previous reclassi-

722

## 2. *Basis and Purpose*

■ UHS argues that the Secretary failed to comply with the APA's requirement that "the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose." 5 U.S.C. § 553(c). The Court disagrees and finds that the Secretary has adequately fulfilled the APA's "basis and purpose" requirement. The Secretary "need not justify the rules [he] selects in every detail" so long as he "explain[s] the general bases for the rules chosen." *Connecticut Light & Power Co. v. Nuclear Regulatory Comm'n*, 673 F.2d 525, 529 (D.C.Cir.), *cert. denied*, 459 U.S. 835, 103 S.Ct. 79, 74 L.Ed.2d 76 (1982). The statement need not be an exhaustive, detailed account of every aspect of the rulemaking proceedings, but it should indicate the major issues of policy that were raised and explain why the agency responded in the manner that it did. *Independent U.S. Tankers Owners Comm. v. Dole*, 809 F.2d 847, 853 (D.C.Cir.), *cert. denied*, 484 U.S. 819, 108 S.Ct. 76, 98 L.Ed.2d 39 (1987).

■ The inquiry into whether an agency has fulfilled the "basis and purpose" requirement of § 553(c) is substantially the same as the inquiry into whether an agency's rulemaking was arbitrary and capricious for failure to set forth a "rational connection" between facts found and rules adopted. *See Connecticut Light & Power*, 673 F.2d at 528. The Court has previously found the Secretary's promulgation of the guidelines not to be arbitrary and capricious, and, for substantially the same reasons discussed in Part III.A.B. of this Memorandum Opinion, the Court finds that the guidelines should not be invalidated for failure of the Secretary to adequately set forth their basis and purpose.

## IV. *Conclusion*

The Court finds that it has jurisdiction to review the Secretary's promulgation of the

fication applications, the Secretary would undoubtedly be forced to readjust Medicare reimbursement rates in order to comply with his budget neutrality obligations. The Court expresses substantial doubt whether the Secretary

guidelines, and it will deny the Secretary's motion to dismiss for lack of subject matter jurisdiction. The Court further finds that the guideline's proximity requirement is not substantively invalid and that the Secretary's rulemaking was not procedurally invalid. The Court will deny UHS' motion for summary judgment and grant the Secretary's motion to dismiss UHS' first amended complaint for failure to state a claim, or, in the alternative, for summary judgment.

would have the authority to engage in this type of retroactive rulemaking. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 109 S.Ct. 468, 472–75, 102 L.Ed.2d 493 (1988).