**ST. JOSEPH HOSPITAL, et al., Plaintiffs,**

v.

**Donna E. SHALALA, et al., Defendants.**

**No. C93–5299Z.**

United States District Court, W.D. Washington, at Seattle.

Jan. 13, 1994.

James M. Beaulaurier, Carol Safron Gown, Sanford E. Pitler, Bennett & Bigelow, Seattle, WA, for plaintiffs.

Charles Pinnell, U.S. Attorney's Office, Seattle, WA, Joseph William LoBue, U.S. Dept. of Justice, Federal Programs Branch, Washington, DC, for defendants.

## ORDER

ZILLY, District Judge.

Defendant Donna Shalala, Secretary of the Department of Health and Human Services and plaintiffs St. Joseph Hospital et. al. each move for summary judgment on plaintiffs' action for declaratory and injunctive relief to prevent the Secretary from enforcing a component of the Medicare group reclassification regulations. The Court heard oral argument on December 16, 1993 and now enters the following order:

## BACKGROUND

Plaintiffs in this action are all Pierce County hospitals that receive Medicare reimbursements. They seek to be reclassified as a group to the Seattle urban area (the so-called "Seattle–Bellevue–Everett Metropolitan Statistical Area") in order to obtain the same level of Medicare reimbursements as Seattle area hospitals.

For purposes of the Medicare Act, hospitals are classified as rural, urban and large urban. 42 U.S.C. § 1395ww(d)(2)(D). Large urban hospitals are reimbursed at the highest levels; rural hospitals at the lowest. Pierce County is classified as an "urban" area, while Seattle area hospitals are classified as "large urban." The disputed regulation which precludes the Pierce County hospitals from obtaining the higher reimbursement levels is 42 C.F.R. § 412.234. Section 412.234 provides a mechanism for all hospitals in an urban county to be reclassified for Medicare payment purposes into another urban or large urban area.

The Secretary promulgated 42 C.F.R. § 412.234 in 1991. Under § 412.234 *all* hospitals in an urban county seeking reclassification to another urban or large urban area must satisfy certain criteria. In addition to general geographic criteria, which plaintiffs are able to satisfy, § 412.234 lists "wage criteria" and "standardized amount inpatient operating costs criteria" (hereinafter the "standardized amount criteria") which must be satisfied. The wage criteria require that hospital wages in the county seeking reclassification be at least 85% of the wages in the adjacent Metropolitan Statistical Area ("MSA") to which the hospitals seek to be reclassified. Plaintiffs have satisfied the wage criteria.

Under the standardized amount criteria, all hospitals must demonstrate that

(1) ... their average incurred costs are more comparable to the amount the hospitals would be paid if they were reclassified than the amount they would be paid under their current classification.

(2) The urban hospitals demonstrate that their costs are more comparable to the average amount they would be paid if they were reclassified if, on average, each hospital's case-mix adjusted cost per case is at least equal to the amount it would be paid under its current classification plus 75 percent of the difference between that amount and the amount the hospital would receive if it were reclassified.

42 C.F.R. § 412.234(c)(1) & (2). Plaintiffs did not attempt to satisfy the standardized amount requirement. Rather, plaintiffs contend that the standardized amount requirement need not be satisfied. Their application for group reclassification was rejected by the Secretary and this action followed.

## ANALYSIS

Plaintiffs essentially raise three arguments: (1) The Secretary's interpretation of § 412.234 is wrong; (2) the Secretary exceeded her statutory authority in promulgating § 412.234; and (3) the regulation is arbitrary and capricious. Each argument is addressed in turn.

### I. The Secretary's Interpretation of § 412.234

██ Plaintiff argues that § 412.234 should be interpreted to allow hospitals to obtain group reclassification by satisfying either the wage criteria or the standardized amount criteria. Plaintiffs point to the fact that there is no explicit requirement in § 412.234 that all of its provisions must be satisfied.

Plaintiffs' argument is without merit. An agency's interpretation of its own regulations "must be given 'controlling weight unless it is plainly erroneous or inconsistent with the regulation.'" *Stinson v. United States,* —— U.S. ——, ——, 113 S.Ct. 1913, 1919, 123 L.Ed.2d 598 (1993). Section 412.234 does not contain any language suggesting that its requirements are intended to apply in the alternative. In contrast, the regulations that govern individual hospital reclassifications specifically provide that an individual hospital may be reclassified for "the purposes of using the other area's standardized amount for inpatient operating costs, wage index value, *or* both." 42 C.F.R. § 412.230(a) (emphasis added). Had the Secretary intended that the

requirements of § 412.234 be applicable in the alternative, one would expect language parallel to that in § 412.230(a).

Furthermore, the preamble to § 412.234 itself makes very clear that the Secretary, at the time § 412.234 was promulgated, intended that both the wage and standardized amount requirement be satisfied. The preamble contains a numerical example of how a group of hospitals in an urban area ("County Z") can satisfy the standardized amount criteria. The example concludes that "[i]f hospitals in County Z *also* meet the wage guideline, they would qualify for reclassification." *Id.* (emphasis added).

The Secretary's interpretation of § 412.234 is correct.

## II. Statutory Authorization

■ Plaintiffs also argue that the Secretary exceeded her statutory authority under the Medicare Act by requiring that group applicants satisfy the standardized amount criteria. The Secretary is authorized to promulgate group reclassification regulations pursuant to 42 U.S.C. § 1395ww(d)(10)(D)(i):

> The Secretary shall publish guidelines to be utilized by the Board in rendering decisions on applications submitted under this paragraph, and shall include in such guidelines the following:
>
> .   .   .   .   .
>
> (II) Guidelines for determining whether the county in which the hospital is located should be treated as being part of a particular Metropolitan Statistical Area.

Plaintiffs contend that the plain language of 42 U.S.C. § 1395ww(d)(10)(D)(i)(II) requires the Secretary to promulgate group reclassification regulations based only on county characteristics (since the statute directs the Secretary to issue guidelines for determining whether a county should be treated as part of an MSA). Unlike the other requirements in § 412.234, plaintiffs contend that the standardized amount requirement bears no relationship to county characteristics.

The statute does not require the Secretary to base her regulations on "MSA standards" (such as commuting patterns, population size, etc.) as plaintiffs contend; rather it requires

the Secretary to issue guidelines for determining whether a county should be treated as belonging to an MSA for purposes of the Medicare Act. Plaintiffs' opening brief demonstrates the flaw in their argument. Plaintiffs do not dispute the validity of the wage criteria. In fact they argue that the "wage criteria ... examines a county characteristic: it compares the hourly hospital wage for the county to the average hourly hospital wage for the adjacent MSA." Pl.Mem. at 17 n. 11. The Secretary correctly points out that the average hourly wage is no more a " 'county characteristic' than the average operating costs incurred by such hospitals" Def. Reply at 7 n. 4.

■ Further, § 1395ww(d)(10)(D)(i) does not limit the Secretary's authority to promulgate group and individual hospital classification guidelines to the four types of guidelines listed in the statute. The statute specifically states that "such guidelines shall include ..." the four enumerated types of guidelines. Courts have held that in the context of individual hospital reclassifications, the Secretary is not limited to the specifically enumerated guidelines. *See e.g. Universal Health Services of McAllen v. Sullivan,* 770 F.Supp. 704 (D.D.C.1991), *aff'd mem.,* 978 F.2d 745 (D.C.Cir.1992); *Athens Community Hosp. v. Sullivan,* 815 F.Supp. 1 (D.D.C.1992). Plaintiffs' contention that such precedents are applicable only to individual (and not group) reclassification guidelines is without merit.

The Secretary did not exceed her statutory authority by including the standardized amount criteria in § 412.234.

## III. The Regulation's Stated Justification

■ Plaintiffs argue that the standardized amount requirement in § 412.234 bears no relationship to the regulation's stated justification. As a result, plaintiffs contend that the requirement is "arbitrary and capricious" and should be invalidated.

"The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicles Mfrs. Ass'n v. State Farm Mutual Automobile Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2867, 77

L.Ed.2d 443 (1983). However, an agency must "cogently explain why it has exercised its discretion in a given manner." *Id.* at 48, 103 S.Ct. at 2869. An agency rule would be arbitrary and capricious if the "agency ... offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. The reviewing court should not attempt itself to make up for such deficiencies; we may not supply a reasoned basis for the agency's action that the agency itself has not given." *Id.* at 43, 103 S.Ct. at 2867. A decision of less than ideal clarity will be upheld if "the agency's path may reasonably be discerned." *Id.*

Section 412.234 was promulgated as part of the 1991 amendments to Part 412 of the C.F.R. The preamble to the 1991 amendments does not discuss why the standardized amount criteria were included as a requirement (in addition to the wage requirement) in the urban group reclassification provisions. The general purpose of all reclassification provisions (group and individual) is summed up in the preamble to the 1991 amendments. With respect to the situations under which reclassifications are appropriate, the Secretary has explained that "geographic reclassifications should be limited to those hospitals which are disadvantaged by their current classification because they compete with the hospitals that are located in the geographic area to which they seek to be reclassified." 56 Fed.Reg. at 25469. At oral argument, both parties agreed that this passage best explains the general purpose of the reclassification guidelines. The Court agrees with plaintiffs' argument that the only plausible construction of "disadvantaged ... because they compete" is that the Secretary intended to consider only disadvantage due to competition (i.e. competitive disadvantage) in promulgating reclassification provisions. Accordingly, the Court must determine whether the standardized amount requirement in § 412.234 in any way furthers the purpose of providing a reclassification mechanism for groups of hospitals that are put at a competitive disadvantage as a result of their current

classification. The Court is satisfied that it does.

The standardized amount criteria compare current operating costs of the group of hospitals seeking reclassification to (1) the reimbursement levels that the group currently receives and (2) the reimbursement levels that the group would receive if it were reclassified. Medicare reimbursement rates for a particular geographic area are computed by taking the standardized reimbursement amount [1] applicable to that area (which is determined on the basis of a national average) and adjusting it by that area's wage index. The preamble to § 412.234 makes clear that when applying the standardized amount criteria, the current reimbursement rates of the hospitals seeking to be reclassified should be calculated using their *current* wage index value. 56 Fed.Reg. at 25480. The wage index value of the MSA to which the hospitals seek to be reclassified should be used in calculating the reimbursement levels the hospitals would receive if reclassified. *Id.*

Thus, in this case, the standardized reimbursement amount that is used to compensate large urban hospitals (which is determined on the basis of a national average of large urban hospitals) is adjusted by a wage index that is reflective of wages *in the Seattle area.* If the actual operating costs of Pierce County hospitals are comparable enough to the Seattle hospitals' wage-adjusted reimbursement levels (i.e. 75% of the difference between current Seattle and Pierce County reimbursement levels), the Pierce County hospitals will be able to satisfy the standardized amount criteria.

By adjusting the standardized reimbursement amount of large urban hospitals for wages in the Seattle area, the Secretary obtains information that is at least somewhat reflective of the actual costs incurred by hospitals in the Seattle area. Thus, when this figure is compared to the actual operating costs of Pierce County hospitals, the Secretary can make an assessment of whether the Pierce County hospitals' costs are more

1. There are three separate standardized amounts, depending on whether the geographic area in question is designated as large urban, urban or rural.

comparable to the costs that Seattle hospitals incur. The standardized amount criteria therefore do, to some degree, provide the Secretary with information that is helpful in determining whether hospitals seeking group reclassification are at a competitive disadvantage.[2] While the Secretary's justification for the group reclassification provisions and, in particular, the standardized amount requirement, is of less than ideal clarity, her path "can reasonably be discerned." The standardized amount requirement is therefore not arbitrary and capricious.

 Plaintiffs also argue that § 412.234 should be struck down as arbitrary and capricious because it impermissibly distinguishes between rural and urban hospitals. Nothing in the statute or legislative history indicates that Congress intended the reclassification guidelines for rural and urban hospitals to be identical. "[I]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron U.S.A. v. Natural Resources Defense Council*, 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). A regulation which fills in a gap left by Congress should be "given controlling weight unless [it is] arbitrary, capricious, or manifestly contrary to the statute." *Id.* at 844, 104 S.Ct. at 2782.

The Secretary was free to adopt different standards for different types of hospitals so long as the justification for each standard the Secretary ultimately adopted was cogently explained. In this case it was.

## CONCLUSION

Having considered the arguments and presentations made in this matter, and having determined that there are no genuine issues of material fact and that Defendant Donna Shalala, Secretary of the Department of Health and Human Services, is entitled to judgment as a matter of law, thereby meeting the standards in Federal Rule of Civil Procedure 56 for summary judgment, the Court hereby GRANTS Defendant Donna Shalala's Motion for Summary Judgment and DENIES the Cross–Motion for Summary Judgment of Plaintiffs St. Joseph Hospital et al.

IT IS SO ORDERED.

The Clerk of this Court is directed to send uncertified copies of this Order to all counsel of record.

---

**2.** Obviously, a more accurate measure of whether the operating costs of Seattle area hospitals are comparable to those of Pierce County hospitals would be to directly compare the actual costs of Seattle hospitals (rather than their wage-ad-justed reimbursement levels) to the actual costs of Pierce County hospitals. The Secretary is not, however, required to adopt the best measure of competitive disadvantage in order for § 412.234 to be upheld.