PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-1202
_____

GEISINGER COMMUNITY MEDICAL CENTER,

Appellant

v.

SECRETARY UNITED STATES DEPARTMENT OF
HEALTH AND HUMAN SERVICES;
MARILYN TAVENNER, Administrator, Centers for
Medicare and Medicaid Services;
ROBERT G. EATON, Chairman, Medicare Geographic
Classification Review Board
_____

On Appeal from United States District Court
for the Middle District of Pennsylvania
(M.D. Pa. No. 3-14-cv-01763)
District Judge:  Honorable Malachy E. Mannion
_____

Argued Tuesday, April 21, 2015
Before:  FISHER, CHAGARES and COWEN, *Circuit Judges*

(Filed: July 23, 2015)

Mary Kay Brown, Esq.
Brown Wynn McGarry Nimeroff
2001 Market Street
Two Commerce Square, Suite 3420
Philadelphia, PA 19103

Joseph D. Glazer, Esq.  *(ARGUED)*
Suite 200
116 Village Boulevard
Princeton, NJ 08540
          *Counsel for Appellant*

Kate L. Mershimer, Esq.
D. Brian Simpson, Esq.
Office of United States Attorney
228 Walnut Street, P.O. Box 11754
220 Federal Building and Courthouse
Harrisburg, PA 17108

Tara S. Morrissey, Esq.  *(ARGUED)*
Michael S. Raab, Esq.
United States Department of Justice
Room 7262
950 Pennsylvania Avenue, N.W.
Washington, DC 20530
          *Counsel for Appellees*

_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Hospitals that are disadvantaged by their geographic location may reclassify to a different wage index area for certain Medicare reimbursement purposes by applying for redesignation to the Medicare Geographic Classification Review Board ("Board"). Section 401 of the Medicare, Medicaid, and SCHIP Balanced Budget Refinement Act of 1999, Pub. L. No. 106-113, 113 Stat. 1501 (1999) ("Section 401"), enacted ten years after the Board was established, creates a separate mechanism by which qualifying hospitals located in urban areas "shall [be] treat[ed] . . . [as] rural" for the same reimbursement purposes. To avoid supposed strategic maneuvering by hospitals, the Secretary of the U.S. Department of Health and Human Services issued a regulation providing that hospitals with Section 401 status cannot receive additional reclassification by the Board on the basis of that status. *See* 42 C.F.R. § 412.230(a)(5)(iii) ("Reclassification Rule").

Geisinger Community Medical Center ("Geisinger"), a hospital located in an urban area, received rural designation under Section 401 but was unable to obtain further reclassification by the Board pursuant to the Reclassification Rule. Geisinger sued the Secretary, Sylvia Matthews Burwell; the Administrator of the Centers for Medicare and Medicaid Services ("CMS"), Marilyn Tavenner; and the Chairman of the Board, Robert G. Eaton, in their official capacities (collectively, "Appellees"), challenging the Reclassification Rule as unlawful. The District Court upheld the regulation under *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984), and granted summary judgment in favor of Appellees. Because we conclude that Section 401 is unambiguous, we will reverse.

3

I.

A.

The Medicare program provides a system of federally-funded health insurance for eligible elderly and disabled individuals under Title XVII of the Social Security Act, 42 U.S.C. § 1395 *et seq.* Under § 1395ww(d), or "subsection (d)," hospitals are reimbursed for inpatient costs at fixed rates for categories of treatment through an inpatient prospective payment system ("IPPS"). Calculating inpatient reimbursement payments under IPPS is a multi-step process. First, the Secretary establishes a nationwide standardized rate for all subsection (d) hospitals located in an "urban" or "rural" regional area. 42 U.S.C. § 1395ww(d)(2)(A)-(D). Second, among other variables, CMS adjusts the standardized rate by a "wage index" that reflects the difference between hospitals' local wages and wage-related costs and the national average. *Id.* § 1395ww(d)(3)(E).

A hospital's wage index is the wage index the Secretary assigns to the specific geographic area where the hospital is located. Hospitals located in rural areas receive a wage index that applies to all rural areas *in their state*. Hospitals located in urban areas are grouped and treated as a single labor market based on the area, known as the Core Based Statistical Area ("CBSA"), in which they are *physically located*. Higher wage indices, which reflect higher labor costs in relation to the national average, correspond to higher reimbursement rates. Thus, the wage index is a significant determinant of the way hospitals are reimbursed for inpatient care costs.

IPPS may yield inequitable results where, for instance, a rural hospital's lower wage index does not accurately reflect its labor costs because it competes for the same labor pool as hospitals in a nearby but higher wage-index urban area.

4

Thus, in 1987 and 1988, Congress amended the Medicare Act to allow a hospital to seek reclassification from its geographically-based wage index area to a nearby wage index area if it meets certain criteria. *See Robert Wood Johnson Univ. Hosp. v. Thompson*, 297 F.3d 273, 276 (3d Cir. 2002) (explaining the history of the Board reclassification system). And in 1989, because only a limited number of hospitals were reclassified under those laws, Congress established the Board to systematically decide hospitals' various reclassification requests. *See* 42 U.S.C. § 1395ww(d)(10). "The Board shall consider the application of any subsection (d) hospital requesting that the Secretary change the hospital's geographic classification for purposes of determining" the hospital's average standardized rate or wage index. *Id.* § 1395ww(d)(10)(C). Congress gave the Secretary authority to formulate guidelines to be used by the Board in rendering its decisions. *Id.* § 1395ww(d)(10)(D)(i) ("The Secretary shall publish guidelines to be utilized by the Board in rendering decisions on applications submitted under this paragraph . . . .").

Under those guidelines, which are generally listed at 42 C.F.R. § 412 *et seq.*, a hospital seeking reclassification must show (1) proximity to the area to which it seeks redesignation, 42 C.F.R. § 412.230(a)(2), (b)(1); (2) that the hospital's three-year average hourly wage ("AHW") is higher than other hospitals' in the area in which it is located, *id.* § 412.230(d)(1)(iii); and (3) that the hospital's AHW is comparable to hospitals' in the area to which it seeks redesignation, *id.* § 412.230(d)(1)(iv). For all three criteria, there are more relaxed standards for hospitals located in rural areas. For instance, the proximity rule requires that urban hospitals be located within 15 miles of the area to which it seeks reclassification, but only requires rural hospitals to be

within 35 miles. *Id.* § 412.230(b)(1). In addition, certain "special" status hospitals, such as rural referral centers ("RRCs"), are exempt from the first and second requirements. *See* 42 U.S.C. § 1395ww(d)(10)(D)(iii); 42 C.F.R. § 412.230(a)(3), (d)(3).

In 1999, ten years after the Board was established, Congress enacted Section 401. Section 401 allows hospitals located in urban areas to be treated as hospitals located in rural areas for the purpose of determining three aspects of Medicare reimbursement: inpatient reimbursement, 42 U.S.C. § 1395ww(d)(8)(E); outpatient reimbursement, *id.* § 1395l(t); and critical access hospital eligibility, *id.* § 1395i-4(c)(2)(B)(i). Only the first component, which amends subsection (d), is at issue here. It reads in full:

> 42 U.S.C. [§] 1395ww(d)(8)[] is amended by adding at the end the following new subparagraph:
>
> (E)(i) For purposes of this subsection, not later than 60 days after the receipt of an application (in a form and manner determined by the Secretary) from a subsection (d) hospital described in clause (ii), the Secretary shall treat the hospital as being located in the rural area (as defined in paragraph (2)(D))[1] of the State in which the hospital is located.
>
> (ii) For purposes of clause (i), a subsection (d) hospital described in this clause is a

---

[1] Pursuant to 42 U.S.C. § 1395ww(d)(2)(D), "the term 'rural area' means any area outside [] an [urban] area."

subsection (d) hospital that is located in an urban area (as defined in paragraph (2)(D)) and satisfies any of the following criteria:

(I) The hospital is located in a rural census tract of a metropolitan statistical area (as determined under the most recent modification of the Goldsmith Modification, originally published in the Federal Register on February 27, 1992 (57 Fed. Reg. 6725)).

(II) The hospital is located in an area designated by any law or regulation of such State as a rural area (or is designated by such State as a rural hospital).

(III) The hospital would qualify as a rural, regional, or national referral center under paragraph (5)(C) or as a sole community hospital under paragraph (5)(D) if the hospital were located in a rural area.

(IV) The hospital meets such other criteria as the Secretary may specify.

*Id.* § 1395ww(d)(8). In the Conference Report accompanying Section 401, Congress highlighted several benefits of a hospital receiving Section 401 status:

Hospitals qualifying under this section shall be eligible to qualify for all categories and designations available to rural hospitals, including sole community, Medicare dependent, critical access, and referral centers. Additionally, qualifying hospitals shall be eligible to apply to the Medicare Geographic [Classification] Review Board for geographic reclassification to another area. The Board shall regard such hospitals as rural and as entitled to the exceptions extended to referral centers and sole community hospitals, if such hospitals are so designated.

H.R. Conf. Rep. No. 106-479, 512 (1999).

The Secretary, in implementing Section 401, was concerned that the statute would "create an opportunity for some urban hospitals to take advantage of the [Board] process." *See* 65 Fed. Reg. 47,054, 47,087 (Aug. 1, 2000). She was afraid that some hospitals, claiming to be disadvantaged by their urban status, could first be reclassified as rural under Section 401 and thereby "receiv[e] the benefits afforded to rural hospitals," and then subsequently claim disadvantage from that rural status and "seek reclassification through the [Board] back to the urban area for purposes of their standardized amount and wage index." *Id.* As a result, the Secretary issued the Reclassification Rule:

An urban hospital that has been granted redesignation as rural under § 412.103 [the regulation implementing Section 401] cannot receive an additional reclassification by the [Board] based on this acquired rural status for a year in which such redesignation is in effect.

8

42 C.F.R. § 412.230(a)(5)(iii). Under the Reclassification Rule, a hospital with Section 401 status cannot be reclassified by the Board to a different wage index area for any year the hospital maintains that status. To seek reclassification by the Board, therefore, a subsection (d) hospital must cancel its Section 401 designation.

B.

Geisinger is a not-for-profit, general, acute care hospital physically located in the Scranton-Wilkes-Barre-Hazelton, PA CBSA. It applied for designation as a Section 401 hospital and was approved, effective June 11, 2014. It also applied for designation as an RRC and was approved, effective July 1, 2014.[2] On August 26, 2014, Geisinger cancelled its Section 401 status, effective October 1, 2015.

On August 28, 2014, Geisinger submitted two applications to the Board to redesignate to a different urban area, effective October 1, 2015: (1) on the basis of its Section 401 status, a primary application as a *rural* hospital to reclassify to the Allentown-Bethlehem-Easton, PA-NJ CBSA ("Allentown CBSA"); and (2) on the basis of its cancelled Section 401 status, effective October 1, 2015, a secondary application as an *urban* hospital to reclassify to the East Stroudsburg, PA CBSA ("East Stroudsburg CBSA"), which would be considered only if the former was denied. Geisinger estimates that reclassification to the Allentown CBSA would increase its reimbursement payments by approximately $2.6 million per year and to the East Stroudsburg CBSA by approximately $1.3 million per year.

---

[2] *See* 42 U.S.C. § 1395ww(d)(5)(C)(i) (providing that to earn status as an RRC a hospital must first be classified as rural).

The 27-mile distance between Geisinger and the Allentown CBSA fails to meet the proximity requirement under the Secretary's rules for hospitals located in urban areas, but it meets the more relaxed criteria for hospitals located in rural areas. *See id.* § 412.230(b)(1). But for the Reclassification Rule, therefore, Geisinger's primary application as a hospital with Section 401 status would be considered by the Board using the rural standards. However, because it was "[l]eft with no choice but to try to comply with the Secretary's illegal regulatory scheme or lose millions of dollars in reimbursement," Geisinger cancelled its Section 401 status so that the Board could alternatively consider its application to the East Stroudsburg CBSA, whose requirements it could meet as an urban hospital.[3] Appellant's Br. at 14.

## C.

On September 10, 2014, while its applications were pending before the Board, Geisinger filed a complaint in the U.S. District Court for the Middle District of Pennsylvania. Count I alleged that the Reclassification Rule violates Section 401. Count II alleged that the Reclassification Rule violates the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq*. Geisinger sought a declaratory judgment that the Reclassification Rule was unlawful and a permanent

---

[3] Geisinger's application to the East Stroudsburg CBSA relied on a rule that allows a hospital with current status as an RRC (as of the date of the Board's review) to reclassify to the nearest urban area without satisfying proximity requirements. *See* 42 C.F.R. § 412.230(a)(3). Geisinger is located 15.7 miles away from the East Stroudsburg CBSA, which is the nearest urban area to Geisinger.

injunction, an order of mandamus, or both, prohibiting the agency from applying the Reclassification Rule to its pending applications and ordering it to apply the rural standards.

The parties filed cross-motions for summary judgment and the District Court granted Appellees' motion on December 22, 2014. *See Geisinger Cmty. Med. Ctr. v. Burwell*, Civ. A. No. 3:14-1763, 2014 WL 7338751 (M.D. Pa. Dec. 22, 2014). The District Court first explained that it had subject matter jurisdiction because Geisinger challenged the legality of the Reclassification Rule itself and not the agency's decisions on its applications, over which the Medicare Act precludes judicial review. *See* 42 U.S.C. § 1395ww(d)(10)(C)(iii)(II) (providing that Board decisions may be appealed to the Secretary and that "[t]he decision of the Secretary shall be final and shall not be subject to judicial review"). On the merits, the District Court held that because Congress did not expressly provide that Section 401 extends to the Board reclassification process, and because Congress granted the Secretary broad authority to administer that process, Section 401 was ambiguous at Step One of *Chevron*, 467 U.S. at 842-43. At Step Two, the District Court concluded that the Secretary's decision to eliminate the potential for "inconsistent reclassifications of the same hospital for the same period" and other "unintended consequences" vis-à-vis the Reclassification Rule was a reasonable accommodation of Section 401 and therefore should be upheld. *Geisinger*, 2014 WL 7338751, at *10. Geisinger timely appealed.

On February 23, 2015, the Board did not treat Geisinger as located in the rural area of Pennsylvania and denied Geisinger's primary application for reclassification to the Allentown CBSA. It approved Geisinger's secondary application for reclassification to the East Stroudsburg CBSA

11

on the basis that Geisinger had cancelled its Section 401 status. Reinforcing the application of the Reclassification Rule, the Administrator of CMS affirmed the Board's decision on June 1, 2015.[4]

## II.

The District Court exercised jurisdiction under 28 U.S.C. §§ 1331 and 1361 and 5 U.S.C. § 701 *et seq.* We exercise appellate jurisdiction under 28 U.S.C. § 1291.

The Court reviews the District Court's grant of summary judgment de novo. *Montone v. City of Jersey City*, 709 F.3d 181, 189 (3d Cir. 2013). Under the APA, a reviewing court may "hold unlawful or set aside agency action, findings, and conclusions" that are found to be, *inter alia*, "not in accordance with law." 5 U.S.C. § 706(2). While we usually afford deference to an agency's interpretation of a statute it is charged with administering, "when we are called upon to resolve pure questions of law by statutory

---

[4] Because Geisinger does not seek judicial review of the denial of its applications, this Court maintains jurisdiction over the appeal. *See ParkView Med. Assocs., L.P. v. Shalala*, 158 F.3d 146, 148 (D.C. Cir. 1998) (explaining that "hospitals [are] free to challenge the general rules leading to denial" where the Secretary affirmed the Board's denial of plaintiff's reclassification request); *Universal Health Servs. v. Sullivan*, 770 F. Supp. 704, 710 (D.D.C. 1991) ("The [Medicare] Act does not . . . expressly preclude judicial review of the guidelines utilized by the Board and the Secretary in deciding upon reclassification requests."); *cf.* 5 U.S.C. § 702 (conferring a general cause of action upon persons "suffering legal wrong because of agency action" and withdrawing it where the relevant statute precludes judicial review).

interpretation, we decide the issue de novo without deferring to [the] agency." *Port Auth. Trans-Hudson Corp. v. Sec'y, U.S. Dep't of Labor*, 776 F.3d 157, 161 (3d Cir. 2015) (internal quotation marks omitted).

### III.

Because this case concerns a challenge to an agency's construction of a statute, we use the familiar two-step analysis set forth in *Chevron*. "First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842-43. We proceed to Step Two "if the statute is silent or ambiguous with respect to the specific issue." *Id.* at 843. Then, "the question for the court is whether the agency's answer is based on a permissible construction of the statute," and the regulation must be given deference unless it is "arbitrary, capricious, or manifestly contrary to the statute." *Id.* at 843, 844.

The "precise question at issue" here is whether the Secretary is required to treat hospitals with Section 401 status like hospitals physically located in rural areas for purposes of Board reclassification. *Id.* at 842. Based on the plain language of the statute, we conclude that Congress has unambiguously expressed its intent that the Secretary shall do so. Because Congress's intent is clear, we complete our analysis at Step One and do not proceed to Step Two to determine whether the Reclassification Rule is a permissible construction of Section 401.

### A.

To determine whether a statute is unambiguous under Step One, "court[s] should always turn first to one, cardinal

13

canon before all others[:]  We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there."  *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992).   That is, because we presume Congress expresses its intent through the ordinary meaning of the words it uses, an exercise of statutory interpretation must begin by examining the plain and literal language of the statute.  *See United States v. Geiser*, 527 F.3d 288, 294 (3d Cir. 2008). And "[w]here the statutory language is plain and unambiguous, further inquiry is not required." *Rosenberg v. XM Ventures*, 274 F.3d 137, 141 (3d Cir. 2001); *In re Price v. Del. State Police Fed. Credit Union*, 370 F.3d 362, 368 (3d Cir. 2004) ("We are to begin with the text of a provision and, if its meaning is clear, end there.").

While we also read the language in its broader context of the statute as a whole, *see id.* at 369-70, this Court made clear in *United States v. Geiser* that "legislative history should not be considered at *Chevron* [S]tep [O]ne," 527 F.3d at 294; *In re Phila. Newspapers, LLC*, 599 F.3d 298, 304 (3d Cir. 2010) ("Where the statutory language is unambiguous, the court should not consider statutory purpose or legislative history.").  Following the Court's established precedent on

14

this matter, we will not consider legislative history in our Step One analysis.[5]

With this framework in mind, we turn to the text of Section 401. The relevant portion reads: "For purposes of this subsection . . . the Secretary shall treat the hospital [with Section 401 status] as being located in the rural area (as defined in paragraph (2)(D)) of the State in which the hospital is located." 42 U.S.C. § 1395ww(d)(8)(E)(i). The parties make several quasi-textual and -structural arguments supporting their interpretation of the statute that we group into three categories and discuss in turn.

1.

Geisinger's first argument relates to Section 401's opening clause, "[f]or purposes of this subsection." *Id.* The

---

[5] Geisinger argues that the Supreme Court's recent plurality decision in *Lawson v. FMR LLC*, which cited to the legislative record to determine whether a provision of the Sarbanes-Oxley Act was ambiguous, mandates that legislative history should now be considered at Step One. 134 S. Ct. 1158, 1169-71 (2014). However, the Supreme Court has often oscillated between considering and then refusing to consider legislative history at Step One. We explicitly noted the Supreme Court's "ambiguous guidance" in this regard and nonetheless firmly staked our position in *Geiser*. 527 F.3d at 293. If the Supreme Court had intended to clarify the widespread confusion around this issue, we imagine that it would say so clearly. And even if it had, it bears emphasis that the decision was a plurality opinion. In any event, this Court has spoken clearly on its refusal to consider legislative history at Step One, *see id.*, and we see no reason to revisit that decision because some members of the Supreme Court considered legislative history in passing in *Lawson*.

15

subsection to which the statute indisputably refers is subsection (d), which, as discussed, addresses a wide range of rules for inpatient care reimbursement under the Medicare program, including the requirements for calculating the standardized rate for rural and urban regional areas, *id.* § 1395ww(d)(2)(D); adjusting the wage index on the basis of a hospital's local geographic area, *id.* § 1395ww(d)(3); and administering the Board reclassification process, *id.* § 1395ww(d)(10). Geisinger alleges that this clause, which explicitly directs the Secretary to apply Section 401 for purposes of subsection (d), requires the Secretary to apply Section 401 to subsection (d)(10), i.e., the Board reclassification process. We agree.

One of our "most basic interpretive canons" is that "[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314 (2009) (alteration in original) (internal quotation marks omitted); *see also Rosenberg*, 274 F.3d at 142 ("[T]he preferred construction of a statute and its regulations is one that gives meaning to all provisions."). Here, Congress must have intended that Section 401 apply comprehensively over subsection (d), including subsection (d)(10), because the language "[f]or purposes of this subsection" would not have any purpose or meaning if it did not.

Appellees counter that because Section 401 is not applicable to every paragraph within subsection (d), whether Section 401 must apply to the Board reclassification process is ambiguous. For instance, the command that a hospital shall be treated as rural is not applicable to subsection (d)(6), which requires the Secretary to make certain publications in the Federal Register, 42 U.S.C. § 1395ww(d)(6); or subsection (d)(7), which limits administrative and judicial

16

review, *id.* § 1395ww(d)(7). In other words, there are some subsection (d) provisions for which the hospital's rural status is irrelevant.

But this does not contravene Congress's intent—demonstrated by using the clause "[f]or purposes of this subsection"—that Section 401 governs everywhere it *is* applicable; it does not contravene Congress's intent that Section 401 governs everywhere a hospital's rural status *is* relevant. *Cf. Babbitt v. Sweet Home Chap. of Cmtys. for a Great Or.*, 515 U.S. 687, 722 (1995) ("[T]he definition of 'take' in [a provision of the Endangered Species Act] applies '[f]or the purposes of this chapter,' that is, it governs the meaning of the word *as used everywhere in the Act.*"). As discussed, a hospital's urban-rural geographic location has a dispositive effect on the hospital's designated standardized rate and wage index. In turn, it has a dispositive effect on the Board reclassification process, the statutory purpose of which is to redesignate the hospital from rural to urban or vice versa for purposes of receiving a new standardized rate or wage index. *See* 42 U.S.C. § 1395ww(d)(10)(C). This bolsters our conclusion that Congress intended Section 401 to apply to these specific processes. Thus, we must read Section 401 as mandating that for purposes of Board reclassification, which is inextricably intertwined with a hospital's rural or urban designation, the Board shall treat the hospital as rural.

The District Court disagreed with this construction, concluding that "the statute does not discuss the Board reclassification process at all, nor does it discuss the intersection of redesignation and geographic reclassification under the Medicare Act." *Geisinger*, 2014 WL 7338751, at *8; *see also* Appellees' Br. at 23 (arguing that Section 401 is "silent" with regard to Board reclassification). Appellees further contend that if Congress had intended that subsection

17

(d) hospitals be able "to take advantage of *both* reclassification procedures almost simultaneously, piling exception on top of exception," then it would have done so more clearly. Appellees' Br. at 25.

In other words, the District Court and Appellees read ambiguity into the statute because of what it does not say, rather than read it for what it plainly says. To be sure, Congress did not explicitly provide that Section 401 applies to subsection (d)(10). But it did explicitly provide that Section 401 applies for purposes of subsection (d), which covers subsection (d)(10) and had covered it for ten years before Section 401 was amended. To comprehensively amend subsection (d)—which contains dozens of paragraphs and subparagraphs concerning inpatient reimbursement, many of which involve a hospital's rural or urban status—rather than each provision within it, Congress necessarily used broad language. Still, "[a]s a general matter of statutory construction, a term in a statute is not ambiguous merely because it is broad in scope." *See In re Phila. Newspapers*, 599 F.3d at 310; *see also Diamond v. Chakrabarty*, 447 U.S. 303, 315 (1980) ("Broad general language is not necessarily ambiguous when congressional objectives require broad terms."). If the phrase was *not* intended to cover subsection (d)(10), contrary to the literal reading of the text, then Congress would have noted which paragraphs of subsection (d) were specifically excluded or included. It did not. And despite Appellees' attempt to infer intent against layering the two reclassification processes, the Court cannot ignore the plain language of the statute. "Our task is to apply the text, not to improve upon it." *Pavelic & LeFlore v. Marvel Entm't Grp.*, 493 U.S. 120, 126 (1989).

18

2.

Next, Geisinger points to the portion of the text mandating that hospitals with Section 401 status be treated "as being located in the rural area (as defined in paragraph (2)(D)) of the state where the hospital is located." 42 U.S.C. § 1395ww(d)(8)(E)(i). Paragraph (2)(D) defines "rural area" as "any area outside" an urban area. *Id.* § 1395ww(d)(2)(D). Because there is only one definition of "rural" within subsection (d), Geisinger argues, Congress must have intended that the Board evaluate applications from hospitals with acquired-rural status under Section 401 in the same way it evaluates applications from hospitals physically located in rural areas.

Appellees argue, however, that Geisinger's interpretation is permissible under the plain language of the statute, but it is not compelled. Another interpretation of Section 401, they reason, is that the Secretary *must* treat Section 401 hospitals as rural for all inpatient reimbursement purposes and, therefore, *must not* reclassify those hospitals as urban under the Board reclassification process.

To be sure, "[a] provision is ambiguous only where the disputed language is reasonably susceptible of different interpretations." *In re Phila. Newspapers*, 599 F.3d at 304 (internal quotation marks omitted). "But just because a particular provision may be, by itself, susceptible to differing constructions does not mean that the provision is therefore ambiguous. . . . Rather, a provision is ambiguous when, despite a studied examination of the statutory context, the natural reading of a provision remains elusive." *In re Price*, 370 F.3d at 369. Here, the natural reading of Section 401 and the statutory scheme reinforces Geisinger's view.

Section 401 does not say that we cannot reclassify the Section 401 hospital as urban. It says we must treat the

19

Section 401 hospital as rural for purposes of subsection (d), including subsection (d)(10).  This means that Section 401 hospitals must be able to participate in the Board reclassification process and seek redesignation from their current location to another location for purposes of receiving a new standardized rate or wage index.  To this end, Section 401 mandates that hospitals with Section 401 status be treated *as rural*, which has well-settled meaning and implications under the Medicare Act.  *See supra* Part I.A.  Thus, hospitals with Section 401 status should apply as being located in the rural area of their state and be evaluated by the Board under the more relaxed standards regularly applied to rural hospitals.    Considering this "broader, contextual view" together with the text, *In re Price*, 370 F.3d at 369, we find the statute unambiguous.  Appellees' view that Section 401 hospitals cannot be reclassified as urban would, in effect, prohibit hospitals with Section 401 status from reclassifying under subsection (d)(10), contrary to the plain and natural reading of the statute.

3.

Third, and finally, Geisinger focuses on Section 401's command that "the Secretary *shall* treat" hospitals with Section 401 status as rural.  42 U.S.C. § 1395ww(d)(8)(E)(i) (emphasis added).  Geisinger argues that the "shall" language in Section 401 must be viewed as mandatory.  *See, e.g.*, *United States v. Monsanto*, 491 U.S. 600, 607 (1989).  Indeed, "[t]he word shall is ordinarily the language of command." *Alabama v. Bozeman*, 533 U.S. 146, 153 (2001) (internal quotation marks omitted).

Appellees do not dispute that Section 401 uses mandatory language, nor do we.  Appellees argue, rather, that because Congress granted the Secretary authority to promulgate guidelines for the Board reclassification process,

20

*see* 42 U.S.C. § 1395ww(d)(10)(D), the Reclassification Rule was a permissible and necessary exercise of that authority in the supposed gap that Section 401 created. Appellees emphasize that "[n]othing in Section 401 constrains the Secretary's broad discretion to establish criteria for Board reclassification," which "'is precisely the type of legislative gap-filling that [courts] entrust to an agency's sound discretion.'" Appellees' Br. at 23 (quoting *Santomenno ex rel. John Hancock Trust v. John Hancock Life Ins. Co. (U.S.A)*, 768 F.3d 284, 299 (3d Cir. 2014)).

But this authority was granted in subsection (d)(10), which, again, covers the Board reclassification process. While the Secretary is unquestionably authorized to issue guidelines regarding Board reclassification, e.g., to design the proximity standards for urban versus rural hospitals, it does not follow that the Secretary is authorized to disregard the plain language of Section 401. Rather, Section 401's mandate that the Secretary *shall* treat Section 401 hospitals as rural without adding any discretionary language as Congress used in subsection (d)(10) and elsewhere in Section 401 itself, *see* 42 U.S.C. § 1395ww(d)(8)(E)(i) (referencing the receipt of an application "in a form and manner determined by the Secretary"); *id.* § 1395ww(d)(8)(E)(ii)(IV) (establishing as the last criterion for Section 401 eligibility any "other criteria as the Secretary may specify"), lends itself to the opposite conclusion. "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (alteration in original) (internal quotation marks omitted). Congress could have granted the Secretary discretion to administer Section 401. It did not. Rather, it used

commanding language and the Court must give that language effect, notwithstanding the Secretary's independent authority to develop guidelines used in the Board reclassification process.

## B.

Section 401 refers to subsection (d) in its entirety, which includes the Board reclassification process; requires the Secretary to treat Section 401 status hospitals as rural, which has a singular definition and well-settled implications under the Medicare Act; and uses mandatory language ("shall"). Altogether, we read Section 401 to reflect Congress's unambiguous intent on the "precise question at issue," *Chevron*, 467 U.S. at 842: for subsection (d) purposes, including administering Board applications for wage index reclassification, the Secretary shall treat Section 401 hospitals as located in the rural area of the state. Because Congress's intent is clear, we end our inquiry here and do not reach *Chevron* Step Two. *See id.* at 843 n.9 ("If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect.").

## IV.

Congress has unambiguously expressed its intent that the Secretary shall treat Section 401 hospitals as rural for Board reclassification purposes. *See* 42 U.S.C. § 1395ww(d)(8)(E)(i). We conclude, therefore, that the Reclassification Rule is unlawful and reverse the District Court's order granting Appellees' summary judgment motion.

22

COWEN, *Circuit Judge*, dissenting

The majority offers a well-reasoned reading of Section 401. In fact, the majority may even offer the most persuasive interpretation of this statutory provision. However, it is not this Court's job to adopt what it believes to be the best reading of the statute. Instead, we must "use the familiar two-step analysis set forth in Chevron." (Majority Opinion at 12.) Under this doctrine, we must first decide whether or not "Congress has directly spoken to the precise question at issue." Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43 (1984). If we conclude that the statute is silent or ambiguous with respect to the specific question at issue, the Court must then consider whether the agency's approach is based on a permissible construction of the statute. See, e.g., id. at 843. "'*Chevron* deference is premised on the idea that where Congress has left a gap or ambiguity in a statute within an agency's jurisdiction, that agency has the power to fill or clarify the relevant provisions.'" Santomenno ex rel. John Hancock Trust v. John Hancock Life Ins. Co. (U.S.A.), 768 F.3d 284, 299 (3d Cir. 2014) (quoting Core Commnc'ns, Inc. v. Verizon Pa. Inc., 493 F.3d 333, 343 (3d Cir. 2007)), cert. denied, 135 S. Ct. 1860 (2015). Accordingly, the Court must leave undisturbed "'a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute . . . unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned.'" Chevron, 467 U.S. at 845 (citation omitted). We must defer to an agency's reasonable construction of a statute—"whether or not it is the only possible interpretation or even the one a court might think best." Holder v. Martinez Gutierrez, 132 S. Ct. 2011, 2017 (2012) (citing Chevron, 467 U.S. at 843-44 & n.11). Because I believe that Section 401 is ambiguous and that the Reclassification Rule constitutes a permissible interpretation of this statutory provision, I must respectfully dissent.

1

"Section 401 refers to subsection (d) in its entirety" (which includes subsection (d)(10)), expressly requires the Secretary to treat a Section 401 hospital as being located in the rural area (as defined in subsection (d)(2)(D)) of the State in which the hospital is located, and, in the process, "uses mandatory language" (i.e., provides that the Secretary "shall" treat the hospital as being located in a rural area). (Id. at 21.)  Even if Section 401 unambiguously requires that a Section 401 hospital be treated as though it were a hospital located in a rural area for purposes of subsection (d)(10), it does not follow that this statutory provision unambiguously requires the Secretary and the Board to consider applications filed by Section 401 hospitals under the same exact criteria the Secretary adopted to govern reclassification applications filed by hospitals physically located in rural areas.

I agree with the District Court (as well as the United States District Court for the District of Connecticut) that Section 401 is silent as to whether hospitals reclassified as rural under Section 401 must be considered eligible for Board reclassification pursuant

2

to subsection (d)(10).[1]  See Lawrence & Mem'l Hosp. v. Burwell, Civ. No. 3:13cv1495 (JBA), 2014 WL 7338859, at *6 (D. Conn. Dec. 22, 2014); Geisinger Cmty. Med. Ctr. v. Burwell, --- F. Supp. 3d ---, 2014 WL 7338751, at *8 (M.D. Pa. 2014); Lawrence & Mem'l Hosp. v. Burwell, 986 F. Supp. 2d 124, 135 (D. Conn. Dec. 6, 2013).  Section 401 does not expressly address the specific criteria that must be satisfied in order to obtain Board reclassification.  Even though it contains mandatory language, this statutory provision does not expressly direct the Secretary or the Board to treat Section 401 hospitals exactly the same as hospitals physically located in rural areas as part of the Board reclassification process.  In fact, the provision does not address the Board reclassification process at all—nor does it take into account the intersection or relationship between Board reclassification

---

[1] It appears that, although the Reclassification Rule was promulgated in 2000, only two lawsuits have been filed (to date) challenging the lawfulness of this rule.  In addition to the current proceeding filed by Geisinger in 2014, Lawrence & Memorial Hospital commenced an action in the District of Connecticut in 2013 attacking the Reclassification Rule as unlawful under the terms of Section 401.  The Lawrence & Memorial Hospital court initially denied the hospital's motion for a preliminary injunction (enjoining defendants from acting on its application for Board reclassification under subsection (d)(10) until the district court could hold a hearing on the merits of its action).  See Lawrence & Mem'l Hosp., 986 F. Supp. 2d at 127-38.  It subsequently granted summary judgment in favor of the defendants.  See Lawrence & Mem'l Hosp., 2014 WL 7338859, at *1-*10.  Lawrence & Memorial Hospital's appeal is currently pending before the Second Circuit.

3

under subsection (d)(10), on the one hand, and Section 401 reclassification, on the other hand.

According to the majority, the District Court and Appellees have read ambiguity into the statute based on what it does not say, as opposed to what it plainly says. However, "what it does not say" (id. at 17) is of special significance here given Congress's creation of two reclassification mechanisms. Both Section 401 and subsection (d)(10) effectively serve as exceptions to the general principle that a hospital's reimbursement is tied to its physical location. Does Section 401 unambiguously grant hospitals like Geisinger the right "to take advantage of *both* reclassification procedures almost simultaneously, piling exception on top of exception"—and to do so under the same Board reclassification standards that otherwise apply to hospitals physically located in rural areas? (Appellees' Brief at 25.) Given the statutory silence, the answer to this question must be "No." According to Appellees, Section 401 could reasonably be read as a directive for the Secretary to treat Section 401 hospitals as rural for all purposes, thereby prohibiting any further reclassification under subsection (d)(10). While this may not be the best reading of the statutory provision, the majority goes too far by claiming that it is contrary to the plain and natural reading of this provision. After all, Section 401 broadly applies to subsection (d) and states, inter alia, that the Secretary "shall treat" the hospital as being located in the "rural" area of the State. Congress, in any event, left what could only be considered a "'gap'" between two distinct reclassification mechanisms, which the Secretary attempted "'to fill'" by adopting the Reclassification Rule. Santomenno, 768 F.3d at 299 (citation omitted). In fact, Congress delegated to the Secretary broad

4

discretionary authority over the Board reclassification process.[2]

Subsection (d)(10)(D)(i) provides that "[t]he Secretary shall publish guidelines to be utilized by the Board in rendering decisions on applications submitted under this paragraph." The majority acknowledges that "the Secretary is unquestionably authorized to issue guidelines regarding Board reclassification, e.g., to design the proximity standards for urban versus rural hospitals," but it underestimates the scope and significance of this delegation of authority. (Majority Opinion at 20.) This Court has recognized that Congress established the Board to pass on applications for reclassification "according to certain standards and guidelines" and then "gave the Secretary the authority to formulate the guidelines to be used by the [Board]." Robert Wood Johnson Univ. Hosp. v. Thompson, 297 F.3d 273, 276 (3d Cir. 2002) (citing subsection (d)(10)(D) and 42 C.F.R. § 412.230 et seq.); see also, e.g., Athens Comty. Hosp., Inc. v. Shalala, 21 F.3d 1176, 1179 (D.C. Cir. 1994) (indicating that Congress delegated to Secretary authority to determine degree to which Board's discretion should

---

[2] I further note that the majority also relies on what Section 401 "does not say" at several points in its opinion. (See Majority Opinion at 17 ("If the phrase was *not* intended to cover subsection (d)(10), contrary to the literal reading of the text, then Congress would have noted which paragraphs of subsection (d) were specifically excluded or included."), 19 ("Section 401 does not say that we cannot reclassify the Section 401 hospital as urban."), 20-21 ("Rather, Section 401's mandate that the Secretary *shall* treat Section 401 hospitals as rural without adding any discretionary language as Congress used in subsection (d)(10) and elsewhere in Section 401 itself, lends itself to the opposite conclusion." (citations omitted)).

5

be limited); Universal Health Servs. of McAllen, Inc. v. Sullivan, 770 F. Supp. 704, 716-17 (D.D.C. 1991) (explaining that Congress intended to grant Secretary power to establish substantive criteria for Board reclassification), aff'd mem., 978 F.2d 745 (D.C. Cir. 1992). "The broad deference of Chevron is even more appropriate in cases that involve a 'complex and highly technical regulatory program,' such as Medicare, which 'require[s] significant expertise and entail[s] the exercise of judgment grounded in policy concerns.'" Robert Wood Johnson, 297 F.3d at 282 (quoting Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994)); see also, e.g., Universal Health Servs., 770 F. Supp. at 718 ("Judicial deference is particularly appropriate because the Secretary's obligation to promulgate reclassification guidelines involves an '"accommodation of conflicting policies that were committed to the agency's care by statute, . . ."'" [Chevron, 467 U.S. at 845] (citations omitted). As previously discussed, the Secretary's duty to ensure budget neutrality is at odds with his duty to reclassify hospitals so that they may receive increased Medicare reimbursement. The Secretary, as sole administrator of the Medicare Act, is in a unique position to evaluate and reconcile the competing policy concerns within the Medicare program.").

Most of the substantive standards or criteria that the Board uses to dispose of reclassification applications are set forth in the Secretary's own regulations. Congress did expressly direct the Secretary to include guidelines for, inter alia, "comparing wages" in the area in which the hospital is classified and the area in which the hospital is applying to be classified. § 1395ww(d)(10)(D)(i)(I). It also specified that the guidelines shall provide for the Board to base any comparison of the "average hourly wage" on the average of the AHW in the most recently published data and such amount from each of the two immediately preceding surveys. § 1395ww(d)(10)(D)(vi). "Under the guidelines published by the Secretary under clause (i), in the case of a hospital which has ever

6

been classified by the Secretary as a rural referral center under paragraph (5)(C), the Board may not reject the application of the hospital under this paragraph on the basis of any comparison between the average hourly wage of the hospital and the average hourly wage of hospitals in the area in which it is located." § 1395ww(d)(10)(D)(iii). In turn, it was the Secretary—and not Congress—that then adopted the specific criteria that a hospital must meet, i.e., a basic proximity requirement as well as standards for comparing the hospital's AHW with the AHW of other hospitals located in the area in which the hospital is located and with the AHW of hospitals in the area to which it seeks to reclassify. See, e.g., Universal Health Servs., 770 F. Supp. at 706-22 (rejecting challenge to Secretary's proximity requirement). It was also the Secretary that chose to treat urban and rural hospitals differently for purposes of these criteria by, among other things, specifying disparate proximity criteria for urban and rural hospitals. I note that subsection (d)(10) does not even use the terms "urban hospital," "hospital located in an urban area," or "rural hospital." Although it does refer to RRCs, the subsection expressly mentions "hospitals located in a rural area" only once, and it does so to specify that two Board members shall be representatives of such hospitals. § 1395ww(d)(10)(B)(i).

The majority appears to suggest that this delegation of authority is entitled to little, if any weight, in the current inquiry because it was set forth in subsection (d)(10)—and not Section 401. According to the majority, "Section 401's mandate that the Secretary *shall* treat Section 401 hospitals as rural without adding any discretionary language as Congress used in subsection (d)(10) and elsewhere in Section 401 itself lends itself to the opposite conclusion [that the Secretary is not "authorized to disregard the plain language of Section 401"]." (Id. at 20-21 (citations omitted).) As the majority recognized, we nevertheless must read the language of a statutory provision in its broader context. See,

7

e.g., FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 132-33 (2000).

Section 401 itself purportedly amends subsection (d)(10) (which was enacted ten years earlier). It is this subsection (and not Section 401) that establishes the Board and grants the Secretary the power to develop guidelines for the Board. It is reasonable to conclude that Congress believed there was no need to add additional language expressly granting the Secretary power to adopt regulations regarding the eligibility of Section 401 hospitals for Board reclassification (and the criteria to be used in assessing their applications for Board reclassification) because Congress had already delegated to the Secretary broad discretionary authority over the entire Board reclassification process. In subsection (d)(10)(D)(iii), Congress expressly prohibited the Secretary from adopting any guideline allowing the Board to reject an application filed by a hospital that has at any time been classified as an RRC on the basis of a comparison of its AHW to the AHW of hospitals in the area in which it is located. Congress similarly could have amended subsection (d)(10) to add, for instance, language directing the Secretary to publish a guideline requiring the Board to consider applications filed by Section 401 hospitals under the same exact criteria that govern reclassification applications filed by hospitals physically located in rural areas. It did not do so, and I find that this fact strongly weighs against the majority's conclusion that Congress unambiguously expressed its intent that the Secretary shall treat Section 401 hospitals as rural for Board reclassification purposes. (Cf., e.g., id. at 20-21 ("'[W]here Congress includes particular language in one section of a statute but omits it from another, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion.' Russello v. United States, 464 U.S. 16, 23 (1983) (alteration in original) (internal quotation marks omitted).").)

8

Because I conclude that Congress has not "directly spoken to the precise question at issue" in this case, Chevron, 467 U.S. at 842-43, I must consider whether the Reclassification Rule constitutes a permissible construction of Section 401. Given the statutory ambiguity, it was the Secretary's task—exercising the broad discretionary authority granted under subsection (d)(10)—to attempt to fill the gap that exists between two reclassification mechanisms. See, e.g., Santomenno, 768 F.3d at 299. It is then our obligation to decide whether this "'interpretation is reasonable in light of the language, policies, and legislative history'" of Section 401 and the statutory scheme as a whole. United States v. McGee, 763 F.3d 304, 315 (3d Cir. 2014) (quoting GenOn REMA, LLC v. EPA, 722 F.3d 513, 522 (3d Cir. 2013), cert. denied, 135 S. Ct. 1402 (2015). In light of the fact that Chevron deference is especially appropriate in the Medicare context, see, e.g., Robert Wood Johnson, 297 F.3d at 282, I believe that the Reclassification Rule satisfies Chevron Step Two.

As the District Court aptly pointed out in its ruling, "[i]t cannot be said that the Secretary's regulation, which was promulgated to avoid permitting a hospital to be treated as rural for some purposes and as urban for others allowing the hospital to receive inappropriate reimbursements, was unreasonable, even if the plaintiff can point to other reasonable policy choices." Geisinger, 2014 WL 7338751, at *11. In the respective preambles to the proposed and final rules implementing Section 401, the Secretary addressed the statutory language, identified her primary concern about this legislation (e.g., that hospitals physically located in urban areas might try to take advantage of Section 401 by obtaining reclassification under this statutory provision and the various benefits accorded to rural hospitals and then seek reclassification under subsection (d)(10) back to urban areas for standardized amount and wage index purposes), explained why such a result would be inappropriate, and considered but rejected

9

alternative approaches. Medicare Program; Changes to the Hospital Inpatient Prospective Payment Systems & Fiscal Year 2001 Rates, 65 Fed. Reg. 47,054, 47,087-89 (Aug. 1, 2000); Medicare Program; Changes to the Hospital Inpatient Prospective Payment Systems & Fiscal Year 2001 Rates, 65 Fed. Reg. 26,282, 26,308 (May 5, 2000); see also, e.g., Lawrence & Mem'l Hosp., 2014 WL 7338859, at *8 ("[T]he record shows that the Secretary's decision was deliberate, logical, and considered."). She expressly addressed the Conference Report accompanying Section 401. 65 Fed. Reg. at 47,087-89; 65 Fed. Reg. at 26,308. By stating that the Section 401 hospitals shall be eligible for Board reclassification and that "[t]he Board shall regard such hospitals as rural," the report does weigh in favor of Geisinger's reading of this statutory provision. H.R. Conf. Rep. No. 106-479, 512 (1999). However, this report (which did not mention subsection (d)(10)'s delegation of authority to the Secretary and did not expressly consider the potential problems that could arise from the existence of two distinct reclassification mechanisms) is insufficient to establish that Congress would never have sanctioned the Secretary's Reclassification Rule. See, e.g., Chevron, 467 U.S. at 845. In the end, the Secretary appropriately exercised the power she was granted by Congress so as to reconcile the distinct reclassification mechanisms created by Congress.

For the foregoing reasons, I would affirm the order of the District Court granting Appellees' motion for summary judgment.